STATE, Plaintiff in error, v. HOCKINGS, Defendant in error.

Supreme Court

*No. 76–472–CR. Submitted on briefs November 29, 1978.—
Decided January 9, 1979.*
(Also reported in 273 N.W.2d 339.)

**710**

For the plaintiff in error the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Wm. L. Gansner,* assistant attorney general.

For the defendant in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender.

COFFEY, J. Writ of error is brought by the plaintiff in error (hereinafter the State) challenging a pretrial order suppressing a statement made by the defendant while in police custody. The order was entered on October 22, 1976.

Ernest Douglas Hockings was charged with the July 2, 1976 arson of a building in Lac du Flambeau, Wisconsin. The building was the residence of one Goldie Larson and the defendant. The defendant was bound over for trial

on the arson charge after a preliminary hearing on July 21, 1976. Additionally, there were misdemeanor charges pending against the defendant, apparently arising out of the same occurrence.

Prior to the arson trial on October 12, 1976, defendant filed a notice of motion to suppress his statement made to Deputy Fire Marshall Eldon Fremming on July 7, 1976. At the time of the statement the defendant was in custody on the misdemeanor charges and had not yet been charged with arson.

A combined *Miranda-Goodchild* hearing was held before the circuit court on the date set for trial, October 14, 1976. Evidence taken at the hearing shows that the defendant had been arrested on the misdemeanor charges five days prior to his talking with the deputy fire marshall in the squad room of the Vilas county jail. The deputy fire marshall[1] testified that he had gone to the jail with the intention of questioning the defendant. Fremming told the defendant that he expected that the defendant would be charged with arson and that it was his duty to advise Hockings of his rights.

The deputy fire marshall, after being advised by Hockings that he had retained counsel, did not read the defendant his *Miranda* rights nor did he ask any questions concerning the incident. Fremming then told Hockings he would contact his attorney and return to question him if it was agreeable with his attorney. Testimony indicates that at that point the deputy fire marshall and the defendant "more or less visited." The defendant himself described the interchange as "conversational."

---

[1] Sec. 165.55, Stats., sets forth the duties and obligations of the state fire marshall with respect to arson. His powers have an investigatory and prosecutorial function, including the power to take testimony and cause "such person to be prosecuted," to search and seize, to conduct investigations, to exclude persons from the place of investigation and to prevent witnesses from communicating with each other.

During the visit between the defendant and Fremming the defendant queried the deputy fire marshall, asking him how much damage had occurred at the Goldie Larson residence. Hockings then stated to the deputy fire marshall that someone had asked him why he (Hockings) had not called the fire department and he said that when the gasoline started burning he "had to get the heck out of there."

The defendant testified that the information given by the deputy fire marshall at the hearing was basically correct, but added that sometime during the 10–15 minute conversation the deputy fire marshall had asked him for permission to get into the defendant's car. The defendant also stated that he neither realized nor was advised by Deputy Fire Marshall Fremming that any statement made during their conversation might be used in evidence against him.

The state in its direct examination of Deputy Fire Marshall Fremming and through cross-examination of the defendant, Hockings, established that the defendant's physical and mental condition appeared normal at the time the statement was given and that the defendant had not been harassed, coerced, cajoled, intimidated or threatened nor was he asked a single question about the incident. The defense emphasized that at no time during the interview with the deputy fire marshall was the defendant made aware of his right to remain silent and to have counsel present.

The trial court granted the defendant's suppression motion stating:

"Well, in view of the fact that the defendant was in custody and did indicate that he had counsel, I don't consider that a purely voluntary statement, the fact that it was made while he was in jail, the fact that he was advised of a question, or purported question, was advised he did have counsel, and to rule otherwise would, I

think, result in a so-called voluntary statement under those circumstances that would be highly suspect, and I, at this point, I'm not going to allow that to come in."

Later the trial judge stated "I think it would be very simple for law enforcement officers when the defendants are in jail to go and visit with everybody . . . I do not think you can go down and talk to people and say I am not questioning you, I am just visiting with him [sic]." Additionally, the judge commented "Admittedly, the statements may have been volunteered in the sense it [sic] was not forced out of him by threats or anything but I think it would give rise to much subterfuge in questioning."

There is one issue on appeal:

Did the defendant, who was in police custody, represented by counsel and who had not been advised of his constitutional rights by a state deputy fire marshall, make a voluntary statement to the fire marshall when such statement was not prompted or initiated by any questions from the deputy fire marshall?

The defendant's motion to suppress the July 7th statement was primarily premised upon two grounds: (1) that it was involuntarily given, and (2) the defendant had not been advised of his rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1601, 16 L. Ed.2d 694 (1966). The *Miranda-Goodchild*[2] hearing is a combined procedure designed to determine the following issues: (1) the voluntariness of a defendant's statement; (2) whether proper *Miranda* warnings were given; and (3) whether the defendant's statement was made as a result of a knowing and intelligent waiver of the *Mi-*

[2] *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965), *cert. den.* 384 U.S. 1017 (1966).

*randa* privilege. *Norwood v. State,* 74 Wis.2d 343, 362, 246 N.W.2d 801, *cert. den.* 430 U.S. 949 (1976).

In order to isolate the issues in this appeal, an analysis of *Miranda* is required. The *Miranda* warning informing an accused of his Fifth and Sixth Amendment rights is required under the following circumstances.

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By *custodial interrogation, we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra* at 444. (Emphasis supplied.)

To the contrary, a statement is admissible without prior *Miranda* warnings as to:

"Any statement given *freely and voluntarily without any compelling influences* is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk with the police without the benefit of warnings and counsel, but whether he can be interrogated." *Miranda v. Arizona, supra* at 478. (Emphasis supplied.)

It is undisputed that no *Miranda* warning was given to Hockings by Fremming. Therefore, the sole issue raised by this appeal is whether the statement was given voluntarily and thus no prior recitation of *Miranda* rights was required. The *Miranda-Goodchild* hearing requested by the defendant did not reach the issues of whether a proper *Miranda* reading was given and whether there was a knowing and intelligent waiver. These issues will

not be addressed in this opinion as not required under the facts of this case.[3]

At a *Goodchild* hearing, the burden is upon the state to prove beyond a reasonable doubt that the statement in question was made voluntarily. *State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965). *See also: State v. Verhasselt,* 83 Wis.2d 647, 653, 256 N.W.2d 342 (1978); *Johnson v. State,* 75 Wis.2d 344, 249 N.W. 2d 593 (1977); *Grennier v. State,* 70 Wis.2d 204, 209, 234 N.W.2d 316 (1975).

In Wisconsin the voluntariness of his statement is determined by the "totality of the circumstances" test. The factors to be considered under the "totality of the circumstances" are the personal characteristics of the defendant balanced against any pressures to which he is subjected, if any, in order to induce the statement. Among the factors to be considered are the following: age of the accused; whether the defendant was apprised of his rights in any substantial form; whether the defendant requested counsel; the length and conditions of his interrogation and whether any physical or psychological pressures, inducements, methods and stratagems were used by the police to obtain his statement. *Norwood v. State, supra* at 365; *Grennier v. State, supra* at 210; *State v. Schneidewind,* 47 Wis.2d 110, 117, 176 N.W.

---

[3] This case is distinguishable from *Leach v. State,* 83 Wis.2d 196, 265 N.W.2d 495 (1978). *Leach* raised the issue of whether *Miranda* rights are knowingly and intelligently waived when a statement is made following the passing of a substantial period of time from when the warnings were given. In this case on appeal it is arguable that the state could have sought the admission of the statement using a *Leach* rationale. The record is silent as to whether Hockings had been advised of his *Miranda* rights at any point during his 5-day period of confinement on the misdemeanor charges.

2d 303 (1970) and *McAdoo v. State*, 65 Wis.2d 596, 606, 223 N.W.2d 521 (1974).[4]

The factors listed above clearly indicate that a statement can be found involuntary if the statement was coerced by virtue of physical or psychological pressures. The trial record is void of any testimony regarding the age, education and intelligence of the defendant, his prior experiences with the police. However, more troublesome is the absence of any trial court finding on any issue other than that the defendant was in custody. There is no finding that the defendant was coerced in any manner, physically or psychologically and there is no finding that Fremming's "conversational" visit with the defendant was an "interrogation." The failure of the trial court to articulate the grounds for its suppression order or make any detailed findings of fact requires a full review of the record.

The evidence demonstrates that the defendant was not physically or psychologically coerced into making the statement. As to the issue of coercion the defendant's hearing testimony reflects the following: (1) the defendant was not threatened by the deputy fire marshall; (2) no promises were made to the defendant; (3) the defendant was not physically abused in any manner; (4) the defendant was not frightened of Fremming; (5) the defendant was not using narcotics nor under the influence of alcohol at the time the statement was made; and (6) that the discussion lasted 10 to 15 minutes and was "conversational." The defendant gave the following response to this question made in summation of the state's proof that the statement was voluntary. "In other words, he wasn't trying to intimidate you? No, he wasn't. Not that I know of." Additionally, Fremming testified to other circumstances regarding the statement:

---

[4] Several of the above cited cases involve *Goodchild* and *Miranda* implications and are cited here only for purposes of illustration of the stated principle.

"*Q.* What kind of room were the two of you in?
"*A.* In the Squad Room.
"*Q.* Was anybody else present?
"*A.* No, sir.
"*Q.* Did you threaten the defendant in any way?
"*A.* No, sir.
"*Q.* Did you hit him?
"*A.* No.
"*Q.* Was he handcuffed?
"*A.* No, sir.
".*Q* Did you do anything to intentionally intimidate him?
"*A.* No."

The record establishes that the state has proven beyond a reasonable doubt that the statement was given not because of any intimidating factors or as a result of a mental or physical frailty of the defendant. To reiterate, despite this evidence the trial judge gave no specific grounds nor made a specific finding as to voluntariness. Therefore, in order to support the trial court's determination that the statement should be suppressed as presumably involuntarily given, inquiry must be undertaken into whether there were psychological pressures exerted upon the defendant during his custodial confinement and discussions with Deputy Fire Marshall Fremming.

In *State v. Lefernier,* 37 Wis.2d 365, 155 N.W.2d 93 (1967), it was implied that the voluntariness of a statement is undermined by the psychological coercion inherent to custodial interrogation. In *Roney v. State,* 44 Wis. 2d 522, 171 N.W.2d 400 (1969), it was specifically explained that both custody and some form of questioning were necessary before the *Miranda* warnings were required:

"As it clearly stated in *Miranda,* however, custody alone does not invoke the *Miranda* rule. *Miranda* holds

that a statement that is volunteered and not elicited as a result of prior interrogation is free from the strictures of *Miranda* even if made while in custody. The statement of the defendant herein was completely spontaneous and was not in response to any interrogation. . . ." *Id.* at 531–32.

While there is no issue that the defendant was in custody,[5] this case will turn upon the determination of whether Fremming's presence in the police squad room and "conversation" with the defendant constituted a custodial interrogation. *Miranda* is explicit in its statement that "by custodial interrogation we mean *questioning initiated by law enforcement officers* after a person has been taken into custody." *Miranda v. Arizona, supra* at 444. (Emphasis supplied.) The record indicates the only question posed by Fremming was in regard to whether he could get into the defendant's car.

It is uncontroverted that the following testimony constitutes the only facts upon which to base the trial court's implied determination that there was a custodial interrogation. Fremming stated the following in response to questioning at the suppression hearing:

"*Q.* At that time did he make any voluntary statement to you?
"*A.* Yes.
"*Q.* What did he state to you?
"*A.* Can I get this in proper order?
"*Q.* Sure.
"*A.* I introduced myself. I told him that the fact that he was in custody facing other charges, that it was my duty to advise him of his rights, that I would expect that he would also be charged with arson, and at that time he informed me that he was being represented by Attorney Terry Hoyt and Mr. Hoyt had just left the County Jail. I told him that I would then contact Mr. Hoyt if it was agreeable with him and come back to question him. We

---

[5] In *Mathis v. U. S.,* 391 U.S. 1, 88 S. Ct. 1503, 20 L. Ed.2d 381 (1968), it was held that for the purposes of *Miranda* a party is subjected to custodial interrogation when confined on one set of charges and is questioned regarding unrelated criminal activities.

then more or less visited. He asked me how much damage occurred at the Goldie Larson residence.

"*Q.* Was that in response to any question of yours?

"*A.* No sir. And I told him I thought it was between two and three thousand dollars. He then stated that someone asked him why he did not call the Fire Department and he said when the gasoline started burning he had to get the heck out of there.

"*Q.* Was that in response to any question?

"*A.* No, sir.

"  .  .  .

"*Q.* Did you ask him any specific questions hoping to get the responses that you got?

"*A.* No, sir.

"*Q.* Did you expect the statement that he gave?

"*A.* No, sir. I did not.

"*Q.* Had you proceeded to interrogate him would you have given him the Miranda Rights?

"*A.* No.

"*Q.* Your intention was not to interrogate him at the time that he made that statement?

"*A.* Not after he informed me he had an attorney."

The defendant substantially corroborated Fremming's account of the incident:

"*Q.* I take you back to July 7, 1976, Ernest, and do you remember an interview that you had with Deputy Fire Marshall Eldon Fremming?

"*A.* Yes, I do.

"*Q.* Now you have heard Deputy Fire Marshall Fremming relate to the Court what happened that day. You were sitting here, right, when his testimony was taken?

"*A.* Yes.

"*Q.* Is that testimony that he gave substantially correct?

"*A.* Yes. Basically that is it except he mentioned the fact about my car. He wanted permission to get into my car.

"*Q.* Did he ask you for permission to get into your car?

"*A.* Yes, sir."

We hold the defendant's statement to be admissible as voluntarily made and under the facts of this case no prior *Miranda* warning was required.

At least as to combined *Miranda-Goodchild* issues the standard for review is that this court will not upset a finding of the trial court with regard to voluntariness unless the finding is contrary to the great weight and clear preponderance of the evidence, inasmuch as voluntariness is a mixed issue of law and fact. Citing *Johnson v. State, supra* at 352; *Grennier v. State, supra* at 210; *Norwood v. State, supra* at 364 and *McAdoo, supra.* Further, on review, any conflicts in the testimony regarding the circumstances of the statement will be resolved in support of the trial court's finding. *Norwood v. State, supra* at 364. Despite this standard of review which favors an affirmance of the trial court's suppression order, the trial court's single finding that the defendant was in custody is insufficient to uphold the suppression of the statement. There was no finding by the trial court that the "conversational" visit between the defendant and the deputy fire marshall was in fact interrogation within the meaning of *Miranda.* Additionally, under the present fact situation where there is no testimony that the statement was prompted by any questions asked by the deputy fire marshall, therefore, there could be no finding that an interrogation occurred. A review of the relevant case law and testimony in this case supports the conclusion that the trial court's suppression order is contrary to the great weight and clear preponderance of the evidence.

This court has, in several cases, permitted the admission of spontaneous "remarks or outbursts" made in the presence of the police but prior to arrest. For example, in *Priddy v. State,* 55 Wis.2d 312, 198 N.W.2d 624 (1972) the police came upon a car which had been reported as stolen. The defendant was occupying the car when the police confronted him with that fact through the use of a bullhorn. The police approached the car, whereupon the defendant, with his hands raised, admitted that he

"put a knife to his throat." *Roney v. State, supra* at 526–27 is also a spontaneous remark case where the statement was admitted without a prior *Miranda* warning inasmuch as it was volunteered. In *Roney,* the defendant was sitting in a parked automobile that was approached by the police who asked the defendant for identification. When given an unsatisfactory response, the officers ran a licensing check and discovered the name of the recorded license holder. They again asked the defendant for identification whereupon the defendant replied "I stole this car." The defendant was then arrested and given *Miranda* warnings. This approach also was applied in *LaTender v. State,* 77 Wis.2d 383, 253 N.W.2d 221 (1977) where the defendant, on his own volition, came to the police station and confessed to a murder. The spontaneous remark cases are legally comparable to the case at bar in demonstrating the custodial circumstances in which a volunteered statement has been admitted into evidence despite the lack of a prior *Miranda* warning.

The case on appeal is factually closer to the following cases where the defendant has been placed under arrest and has made a statement without the benefit of his *Miranda* rights. In *Strait v. State,* 41 Wis.2d 552, 164 N.W. 2d 505 (1969) the defendant was discovered huddling behind a sheet of plywood in the basement of a burglarized restaurant. The defendant was handcuffed and taken to a squad car. En route to the police station the defendant was informed that he did not have to make a statement and that anything he did say could be used against him in court. This court concluded that the defendant then volunteered an inculpatory statement and in its decision only briefly addressed the police failure to formally advise the defendant of his *Miranda* rights. Primary emphasis was placed upon the trial court finding that the statement had been volunteered.

In *Flowers v. State,* 43 Wis.2d 352, 168 N.W.2d 843 (1969), a defendant while under arrest for indecent be-

havior with a minor and waiting for a paddy wagon to arrive engaged one of the arresting officers in conversation. The defendant spontaneously stated that he was not trying to have intercourse with the child. Rather, he had "only" engaged in the act of cunnilingus. No *Miranda* warning had been given prior to the statement and the statement was found admissible.

Two recent cases also indicate that some questioning by the authorities can be undertaken before the *Miranda* rights need be given. In *Mikulovsky v. State,* 54 Wis.2d 699, 196 N.W.2d 748 (1972) the defendant sought to exclude the confession of the murder of his parents because he was not advised of his rights prior to the statement. Factually, the confession came at the end of a 3-day police investigation into the parents' whereabouts. On each of the first two days the defendant had been interviewed by the police without *Miranda* rights being given. On the 3rd day the defendant and his brother were asked to come to the police station for further interviewing. They were advised that they were not compelled to come and that they could leave at anytime, but no *Miranda* rights were given. The defendant was interviewed by several officers throughout the morning. Following lunch, when a detective suggested that the defendant pray for the welfare of his parents, the defendant admitted to killing them. The defendant was then arrested and for the first time advised of his constitutional rights.

In *Schimmel v. State,* 84 Wis.2d 287, 267 N.W.2d 271 (1978), an inmate in a state reformatory and a participant in an alcoholic rehabilitation program conducted at the Winnebago Mental Health Institute confessed to the attempted rape and murder of a restaurant waitress. This court found the defendant's statements to an employee of the alcoholic treatment program admissible as volunteered despite the fact that the employee did not advise the defendant of his rights and further, asked

specific questions and took notes during the defendant's declarations. The program employee testified that prior to the defendant's admissions they had engaged in general conversation.

The defendant places great emphasis on the factual setting and result reached in *Brewer v. Williams,* 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed.2d 424 (1977). In *Brewer,* the defendant's murder conviction was reversed based upon the admission of custodial statements made in violation of his *Miranda* rights. In that case the defendant was arrested in Davenport, Iowa for the abduction of a small child in Des Moines. He was given *Miranda* rights and consulted Davenport counsel. It was arranged that the defendant would have counsel in Des Moines and the police agreed not to question the defendant during the drive back to Des Moines. The defendant made inculpatory statements in response to police inquiries found by the Supreme Court to constitute a "custodial interrogation." The interrogation was in this form:

"I want to give you something to think about while we're traveling down the road. . . . Number one, I want you to observe the weather conditions, it's raining, it's sleeting, it's freezing, driving is very treacherous, visibility is poor, it's going to be dark early this evening. They are predicting several inches of snow for tonight, and I feel that you yourself are the only person that knows where this little girl's body is, that you yourself have only been there once, and if you get a snow on top of it you yourself may be unable to find it. And, since we will be going right past the area on the way into Des Moines, I feel that we could stop and locate the body, that the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas [E]ve and murdered. And I feel we should stop and locate it on the way in rather than waiting until morning and trying to come back out after a snow storm and possibly not being able to find it at all." *Brewer v. Williams, supra* at 392–93.

The defendant's reliance on *Brewer* is unpersuasive for two reasons. First, the *Brewer* holding indicates that the Supreme Court decided this case on the basis that the defendant who had received *Miranda* rights had not knowingly and intelligently waived his right to counsel. *Supra* at 404. Therefore, Brewer does not support this case which is decided solely on the grounds of whether the custodial statement was voluntary or involuntarily compelled. Secondly, *Brewer* is factually distinguishable as the Des Moines police admitted to playing upon the deeply religious beliefs of the defendant, and that they were, in fact, attempting to get information from the defendant. In this case there is no evidence of Fremming admitting to visiting with the defendant in order to elicit evidence through psychological subterfuge. In fact, the testimony is unequivocally to the contrary that Fremming had no intention of questioning Hockings after he learned that the defendant had counsel. The record is void of any inference that Hockings made the statement upon the prompting of any questions or statements made by the fire marshall. The trial court's suppression order cannot be upheld on this evidence. The record indicates that the statement was voluntary and not initiated by any action on the part of the law enforcement authority.

One other factor is worthy of discussion and that is that the nature and content of the statement supports the conclusion that it was voluntarily made. The state claims the following statement to be inculpatory:

"He then stated that someone asked him why he did not call the fire department and he said when the gasoline started burning he had to get the heck out of there."

Inculpatory inferences placing the defendant at the scene can be drawn from the statement; viewed, however, as an explanation of his presence at or near the scene of the crime at the time alleged, the statement

becomes exculpatory. Persuasive in this regard are the following facts: the arsoned property was his part time residence, the smell of gasoline is recognizable and it is a natural reaction to become preoccupied by a burning house rather than calling the fire department. The statement is ambiguous at best and capable of supporting either the inference of guilt or innocence. The statement is clearly not a confession.

The inescapable conclusion is that the defendant volunteered this statement attempting to explain his presence near the scene of the crime and presumably he made this choice after assessing his interests. The statement was volunteered in order to persuade Fremming that the defendant was not guilty of arson. The trial court should be mindful of Mr. Justice WHITE's concurring opinion in *Michigan v. Mosley,* 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed.2d 313 (1975) [6] where he stated that *Miranda* should not be so paternalistically applied so as to "imprison a man in his privileges." *Id.* at 108–09.

In *State v. Parker,* 55 Wis.2d 131, 140, 197 N.W.2d 742 (1972), this court wrote:

"As this court said in *Krueger v. State* (1972), 53 Wis.2d 345, 356, 192 N.W.2d 880, citing *Phillips v. State* (1966), 29 Wis.2d 521, 530, 139 N.W.2d 41, 'One must distinguish between motivation and a compelling overpowering mental force. . . . The confrontation did not cause or force the defendant to make the statement. It

---

[6] *Mosley* and cases such as *Beckwith v. U. S.,* 425 U.S. 341, 96 S. Ct. 1612, 48 L. Ed.2d 1 (1976) and *Michigan v. Tucker,* 417 U.S. 433, 41 L. Ed.2d 182, 94 S. Ct. 2357 (1974) indicate that the U. S. Supreme Court is favoring a trend away from a strict application of *Miranda v. Arizona, supra,* and that judicial scrutiny is directed more towards the trustworthiness of this statement and a determination of whether the statement was a product of free will.

was only the occasion.' *State v. Schneidewind* (1970), 47 Wis.2d 110, 119, 176 N.W.2d 303." *Id.* at 140.

In the absence of any evidence supporting a finding that the defendant was the subject of a custodial interrogation initiated and directed by law enforcement personnel, the defendant's voluntary statement must be held admissible. To hold otherwise would result in an unwarranted extension of the prophylactic and constitutional safeguards contemplated by *Miranda* and decisions of this court.

*By the Court.*—Order reversed and cause remanded for proceedings consistent with this opinion.