# STATE of Wisconsin, Plaintiff-Respondent,†
v.

# Charles D. EDWARDSEN, Defendant-Appellant.

Court of Appeals

*No. 85–2317–CR. Argued July 10, 1986.——Decided November 12, 1986.*
(Also reported in 400 N.W.2d 18.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant, there were briefs and oral argument by *Donna L. Hintze*, assistant state public defender.

For the plaintiff-respondent, there were briefs by *Bronson C. La Follette*, attorney general and *Sharon Ruhly*, assistant attorney general. Oral argument by *Sharon Ruhly*.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   The defendant in this criminal case moved to suppress statements made to police involving cocaine trafficking on grounds that the police promised his statements would not be used against him in court. The trial court denied the motion, holding that, based on the record, the defendant was not induced by a promise. The state claims that we are bound by this since it is a finding of fact. We disagree. It is a finding of constitutional fact, reviewable *ab initio*. Reviewing the totality of the circumstances, we hold that the defendant believed there was a promise and his statements were induced by this belief. Therefore, we reverse and remand.

Charles Edwardsen entered no contest pleas to charges of battery to a police officer and possession of a

controlled substance with intent to deliver. His pleas followed a denial of a motion to suppress statements made to police.

Before reciting the facts, this court notes that the statements in question were surreptitiously tape recorded by police, which is another issue, but one which we will not reach. This court, as well as the trial court, was therefore able to hear the conversation. Following are the pertinent facts gleaned from these recordings and other parts of the record.

Edwardsen was a passenger in a car driven by his niece. His niece was stopped by a town constable for speeding. Subsequently, Edwardsen and the constable were embroiled in a fight. As a result, both Edwardsen and his niece were placed under arrest. The auto was towed to the Kenosha County Safety Building where it was impounded and searched. The search revealed two ounces of cocaine.

Deputies Smith and Klawitter subsequently interviewed Edwardsen about the cocaine. They identified themselves and advised Edwardsen of his *Miranda* rights. The defendant signed a waiver of constitutional rights form and Deputy Smith, in particular, then began to ask questions which were taped without Edwardsen's knowledge.

The tapes reveal the following: Deputy Smith wanted to know Edwardsen's supplier. Edwardsen, however, expressed concern about his niece. He said she had had no part in this and wanted to keep her out of it. Deputy Smith responded that if both Edwardsen and his niece cooperated fully, perhaps something could be done about both of their charges.

Edwardsen then expressed concern not about his own safety, but the safety of his niece. Officer Smith

responded that if the "feds" were interested enough it might be possible to get into the federal witness protection program. Smith underscored, however, that the "feds" would not be interested just in Edwardsen's two ounces of cocaine. They would be very interested, however, if Edwardsen could lead them to a multi-kilo source.

At this point, the conversation took the following turn.

> EDWARDSEN: O.K. How far is this going right here, we're talking about between you and him, right? It's between you and him [the other deputy] and me. I got your word on that?
>
> DEPUTY SMITH: You got it.
>
> EDWARDSEN: I got your word on that. I mean, if later on I plead not guilty, what we're talking about never existed, man. [Pause] I just say that I don't know, it's her car and I was just a passenger in it.

After he said, "if later on I plead not guilty, what we're talking about never existed, man," Edwardsen claims that Deputy Smith nodded his head in agreement. Deputy Smith testified that he did not recall this but no one disputes that there was a significant pause after the statement was made.

From this exchange comes Edwardsen's argument. Edwardsen claims that all statements made subsequent to this exchange were involuntary because they were induced by the officer's promise to keep the statements confidential. According to Edwardsen, the understanding was that if he gave information about his involvement with his source, that information would not leave the room except to help make a case against the source; it would not be used against him.

As to what was said, the state holds no dispute. As to the meaning of what was said, the state disagrees. This brings us to our first issue which is: What is the applicable standard of review for this court? The state acknowledged at oral argument that whether a defendant's confession is voluntary is a legal question, independently determined by an appellate court. *State v. Woods*, 117 Wis. 2d 701, 715-16, 345 N.W.2d 457, 465 (1984). The state further acknowledged that the perspective from which the statements must be viewed is that of the defendant, not the prosecutor. In other words, whether a confession was voluntary requires a determination of the defendant's state of mind. *United States v. Harris*, 301 F. Supp. 996, 999 (E.D. Wis. 1969). Therefore, if the *defendant* believes that a coercive promise has been made, even though no such promise has actually been made, and his plea is induced by this belief, it is an involuntary and void plea. *United States ex rel. Thurmond v. Mancusi*, 275 F. Supp. 508, 516 (E.D. N.Y. 1967).

The state claims, however, that whether defendant's state of mind was such that he *believed* a coercive promise was made is a question of fact. Since questions of fact are subject to the clearly erroneous rule under sec. 805.17(2), Stats., and since the trial court found that defendant did not believe a promise was made, the state concludes that we are bound by the trial court's determination.

Central to the state's argument is the trial court's discussion of what the state believes are underlying "historical" facts. The trial court found the following: (1) While the defendant says he believed there was a promise not to use the statements for prosecutive pur-

213

poses, there are portions of the tape from which a trier of fact could infer that he was exacting only a promise to keep his supplier from knowing that he was the informant. (2) Outside the presence of police officers, Edwardsen made the statement to his niece, transcribed surreptitiously on tape, that should the case go to trial, it would be the officer's word against his. The trial court found this to be a clear indication that he knew the police would use his statements against him if he pled not guilty. (3) Edwardsen had many prior convictions and knew the system well. He knew any statements he made could be used against him in court.

The state maintains that these are findings of historical fact regarding whether the defendant believed he had obtained a promise to keep the statements from being used against him. The state concludes that since these findings have support in the record, they have a presumption of correctness and we may not overturn them.

We reject the state's argument concerning the applicable standard of review. Whether defendant "believed" he had exacted a promise by police not to use the statements against him is a question of "constitutional fact." This is so because the ultimate determination is whether the defendant was induced to make a statement that he might not have otherwise voluntarily made. What the defendant "believed," therefore, is inextricably linked to the defendant's state of mind. As the state has already conceded, determination of a defendant's state of mind is a question of constitutional fact. As our supreme court has ruled, these questions are not questions of evidentiary or historical fact, but are rather questions that require " 'application of constitutional

principles to the facts as found . . . .' " *State v. Mazur*, 90 Wis. 2d 293, 309, 280 N.W.2d 194, 201 (1979) (quoting *Brown v. Allen*, 334 U.S. 443, 507 (1953), (Frankfurter, J., dissenting in part, concurring in part)). We conclude that we are not bound by the trial court's determination.

■

The correct procedure for independently reviewing this legal question is to carefully examine the record to determine if the state has met its heavy burden of proving beyond a reasonable doubt that defendant's statements were voluntary. *State v. Hockings*, 86 Wis. 2d 709, 717, 273 N.W.2d 339, 342 (1979). In doing so, the court must view the totality of the circumstances, weighing the individual characteristics of the person against any pressures to which he was subjected to induce the statement. *Id.*

Undertaking that analysis, we have read the record and reviewed the tapes several times. Under the totality of circumstances, we conclude that the state did not meet its burden of proving the defendant's statements were voluntary beyond a reasonable doubt.

From our review of the tapes, we conclude that Edwardsen and the officers were engaged in a bargaining discussion prior to the giving of any worthwhile information about Edwardsen's sources. Officer Smith, in particular, was suggesting that Edwardsen's cooperation could result in lenient treatment for Edwardsen and his niece. Edwardsen was amenable to that but steadfastly maintained that, without a confession from him, the state would not have much of a case against him anyway. He wanted the charges against his niece dropped completely and he wanted protection for her. While Officer Smith said he could not promise to give

Edwardsen what he desired, he indicated he would try to see that Edwardsen's desires were implemented.

The critical stage of the discussion occurs at this point. Edwardsen says, "How far is this going right here, we're talking about between you and him, right? It's between you and him and me. I got your word on that?" Officer Smith replies, "You got it." That this colloquy speaks of an agreement of secrecy, there is no doubt, but it can be argued, "secret from whom?"

This question is immediately answered in the very next statement by Edwardsen. He says, "I got your word on that. I mean, if later on I plead not guilty, what we're talking about never existed, man." [Pause]

The significance of this statement is clear. The officer and Edwardsen both contemplated that, in exchange for Edwardsen's information, he would in all probability plead to negotiated charges. However, were he to fight the charges, the statements could not then be used against him.

■

This relates back, in perfectly logical fashion, to Edwardsen's earlier belief that without anything more, the state's case was weak. We conclude that when Deputy Smith assented to Edwardsen's offer without objection or limitation, Edwardsen though he had an agreement. His subsequent statements were induced by his reliance upon the agreement and were not otherwise voluntarily given.

Our conclusion does not fly in the face of the historical facts found by the trial court and underscored by the state. For instance, the trial court found that Edwardsen had no knowledge that his statements were on tape. In a supposedly secret discussion with his niece, when police were absent from the interrogation room,

216

Edwardsen said that if the police tried to make use of his statements against him, he would just deny he ever made them. Based upon these historical facts, the trial court concluded that Edwardsen did not really believe that he had an agreement by police to refrain from using his statements to prosecute him.

■

We acknowledge that Edwardsen is a defendant who has had prior experience with the criminal justice system. Contrary to the trial court's reasoning, however, we view Edwardsen's statement as that of a seasoned criminal defendant believing that, despite the agreement, there is nothing forcing the officers to keep their word. Should the statements be used against him, he would just say that it was their word against his. We conclude that this statement does not prove beyond a reasonable doubt that Edwardsen's state of mind was as the state claimed.

■

Viewing the record in the totality of the circumstances, Edwardsen gave his statements after being induced by a promise not to use them to prosecute him. The officer's promise was such as to overbear Edwardsen's will to resist and brought about a confession not freely self-determined. All statements subsequent to the promise must therefore be suppressed. We reverse and remand with these directions.[1]

---

[1] Defendant also claims that the statements were inadmissible because they were obtained in violation of Wisconsin's Electronic Surveillance Law. *See* secs. 968.27 through 968.33, Stats. We need not reach the issue.

*By the Court.*—Judgment reversed and cause remanded with directions.