MYERS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 155. Argued June 6, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 311.)

250

256

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Steven B. Wickland,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The defendant contends (1) that the search of the envelope was constitutionally impermissible; (2) that seizure of the face mask was constitutionally impermissible; and (3) that refusal of the court to allow the defendant the right to use the prior testimony of state's witnesses given at a John Doe hearing for impeachment purposes was error.

We are of the opinion that neither the search of the envelope nor the seizure of the face mask violated any constitutionally protected right of the defendant. We are of the further opinion that it was prejudicial error not to allow the defendant to use prior inconsistent testimonial statements of state's witnesses given at a secret John Doe hearing for impeachment purposes.

Defendant argues that Miss Callies' "consent" was limited in that it could not extend to a "search of the envelope." Further, that since the envelope was sealed the checks therein were not in plain view—that is, the plain view doctrine does not apply when the sheriff had to pick up the envelope and examine it under the lights in order to ascertain its contents.

However, the defendant's counsel concedes that Miss Callies did have authority to consent to the apartment search, and the sheriff was authorized to "seize" the envelope. The defendant only complains that the sheriff could not legally open the envelope to search it. It is defendant's position that the sheriff needed a search warrant before the envelope could be opened and searched.

The basis of defendant's contention on a "lack of consent" to allow the envelope's search is premised on *Frazier v. Cupp* (1969), 394 U. S. 731, 740, 89 Sup. Ct. 1420, 22 L. Ed. 2d 684. This argument is not persuasive. It is unreasonable to conclude that the sheriff could not lawfully search the envelope which he lawfully seized pursuant to Miss Callies' consent to search the apartment. The defendant is attempting to make a distinction without a rational difference under the facts of this case. In *Frazier*, the United States Supreme Court dealt with the search of a duffel bag which the petitioner and one Rawls jointly used. The police came to Rawls' home and he consented to a search of the home which included the bag. While searching the bag the police came across

evidence incriminating petitioner. The court held that since Rawls had consented to the search and was a joint user of the duffel bag the search was permissible and legal. It was not an "unreasonable search" under the fourth amendment. Notwithstanding, the petitioner argued that since Rawls only had permission to use "one compartment of the bag," he had no authority to allow the police to search the "other compartments." The court dismissed the contention by saying at page 740:

". . . We will not, however, engage in such metaphysical subtleties in judging the efficacy of Rawls' consent. Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside. We find no valid search and seizure claim in this case."

The same argument is made here. Defendant wants this court to judge the efficacy of Miss Callies' "consent" to allow the search of the envelope that is admittedly lawfully seized. We also decline to engage in such "metaphysical subtleties." The envelope was left in Miss Callies' apartment in plain view on top of the refrigerator, partially opened with defendant's name on it; and the sheriff knew Winneconne checks were taken in the burglary for which defendant was arrested. The defendant assumed the risk that someone would look inside the envelope. It cannot be said that there was a reasonable expectation of privacy as to the contents of the envelope when it is in plain view on top of the refrigerator, with defendant's name on it.

In *Mears v. State* (1971), 52 Wis. 2d 435, 439, 190 N. W. 2d 184, we stated it is:

". . . '. . . well established that where two persons have equal rights to the use or occupancy of premises either may give consent to a search and the evidence thus disclosed can be used against either of them.'
". . .

". . . where a young woman, not his wife, with whom the defendant, a married man, was living voluntarily consented to a police search of the premises without a warrant, the Seventh Circuit United States Court of Appeals held the search to be constitutionally proper, stating:

" 'The defendant's argument that Miss Hilan's consent could not affect his right to be free from unreasonable searches must also be rejected. In United States v. Sferas, supra, 210 F. 2d at 74, we acknowledge the rule that "where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." The rule has been applied by other courts to searches following consent given by the wife of the defendant, e. g. Roberts v. United States, 332 F. 2d 892 (8th Cir. 1964), cert. denied, 380 U. S. 980, 85 S. Ct. 1344, 14 L. Ed. 2d 274 (1965) and by a woman standing in the position of the defendant's wife, Nelson v. People of State of California, 346 F. 2d 73, 77, (9th Cir.), cert. denied, 382 U. S. 964, 86 S. Ct. 452, 15 L. Ed. 2d 367 (1965). The considerations most applicable to the third person's consent in such cases are not related to principles of agency connecting the defendant with the person acquiescing in the search, but rather concern the reasonableness, under all the circumstances, of a search consented to by a person having immediate control and authority over the premises or property searched. [cite omitted] Miss Hilan lived in the apartment, and therefore had authority to consent to a search of it. . . .' " [3] pp. 441, 442.

The defendant contends that the seizure of the face mask was beyond the scope of the warrant in violation of his fourth amendment right. It is argued that because the face mask was not described in the search warrant its seizure is unwarranted and unreasonable. It is a fundamental protection under the fourth amendment that ". . . no Warrants shall issue, but upon probable

---

[3] *United States v. Airdo* (7th Cir. 1967), 380 Fed. 2d 103, 106, 107, certiorari denied (1967), 389 U. S. 913, 88 Sup. Ct. 238, 19 L. Ed. 2d 260.

cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized." Stanford v. Texas* (1965), 379 U. S. 476, 481, 85 Sup. Ct. 506, 13 L. Ed. 2d 431. But the fourth amendment does not prohibit the seizure of instrumentalities, fruits, contraband and "mere evidence" of a crime which is discovered in the course of a valid search, whether it be a search incident to an arrest or by a valid search warrant. *Warden v. Hayden* (1967), 387 U. S. 294, 300, 301, 87 Sup. Ct. 1642, 18 L. Ed. 2d 782; and *Morales v. State* (1969), 44 Wis. 2d 96, 106–108, 170 N. W. 2d 684.

In *United States v. McDonnell* (D. C. Neb. 1970), 315 Fed. Supp. 152, 168, that court set forth the following standard which we adopt with respect to items of property seized but not particularly described in the warrant, to wit:

". . . An officer may seize any property which is evidence of a crime, whether or not different from the crime by which the search was prompted, if: (1) the evidence is discovered in the course of a lawful search, whether initiated by a valid search warrant, a valid arrest warrant, circumstances justifying a lawful warrantless search, or circumstances justifying a lawful warrantless arrest, (2) the evidence in itself or in itself with facts known to the officer prior to the search, but without the necessity of subsequent development of additional facts, provides a connection between the evidence and criminal activity, (3) the evidence is discovered in the physical area properly searchable within the purposes for which the search was initiated, and (4) the evidence is discovered while the officer is actually searching for objects within the purpose for which the search was initiated."

At bar, the seizure of the face mask by the sheriff meets this four-point test. As the state correctly points out in its brief:

". . . The mask was discovered as he conducted a lawful search pursuant to a warrant. The mask provided a connection with criminal activity, being an instrumentality found with other instrumentalities of the crime. An assumption that such a face mask would be used to conceal a burglar's identity is a logical one. The mask was found in the trunk in an area specified by the warrant, and the sheriff was in the process of looking for items listed in the warrant when he came upon the mask."

On this basis the scope of the search was not illegally expanded nor was the face mask improperly seized. As the court in *McDonnell* pointed out at page 168:

"It is sensible that, given a lawful entry, if an officer sees in plain sight evidence not described in the warrant, he should be permitted to seize it if he does not thereby expand the scope of the entry and search. To require the officer to abandon or complete the search, get another warrant on the strength of what he saw while making the search, and then return before seizing the property would be sacrificing substance for form, where instant connection between the newly seen evidence and the crime can be made."

The controlling issue in this case is whether a witness' testimony at a John Doe hearing may be used at trial by the defendant for the purpose of impeachment despite the fact that the prosecution has not made reference to any specific testimony of the witness at the John Doe hearing on direct examination.

Sec. 968.26, Stats., states that subject to sec. 971.23, the record of the John Doe proceeding and the testimony taken therein ". . . shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used." Sec. 971.23, among other things, relates only to the discovery of the defendant's own statements or admissions, and that the defendant can obtain a list of

state witnesses who will testify at trial. That section does not allow the statements of witnesses to be discovered or turned over to the defendant. However, sec. 971.24 provides that statements of witnesses shall be given to the defendant at trial and the court may order the production of such statements prior to trial if "cause" is shown.

At trial, the only reference the district attorney made about these proceedings is that he asked both Robert and Patricia Marquardt if they testified at a secret John Doe hearing and if the court gave them immunity. Nothing more and nothing less was asked. The state takes the position that because the John Doe proceedings are secret and the district attorney did not use any of its testimony, the defendant cannot use such testimony in an attempt to impeach the Marquardts' testimony at trial. Defendant contends that he should be allowed to use the testimony for "impeachment purposes." He argues that sec. 968.26, Stats., must be read as being subject to both secs. 971.23 and 971.24. In the alternative, defendant argues that if sec. 968.26 is not read as subject to sec. 971.24, and if the prosecutor has the right to withhold prior inconsistent statements of his witnesses, or has the power to keep such statements from the jury, then defendant's constitutional right to due process of law is being violated.

Sec. 968.26, Stats., is explicit on its face. It expressly states that John Doe proceedings are only subject to sec. 971.23. The language is clear and unambiguous. This being the case, no judicial rule of statutory construction can include sec. 971.24. *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 266, 163 N. W. 2d 625.

On the other hand, not to allow the defendant at trial "access to" and the "right to use" prior inconsistent statements for "impeachment purposes" is a violation of

his constitutional right to due process of law. In *State v. Richards* (1963), 21 Wis. 2d 622, 633, 634, 124 N. W. 2d 684, this court stated:

". . . a defendant in a criminal case is entitled to inspect statements previously made to the authorities by witnesses called to testify on behalf of the state. This right goes only to statements or portions thereof concerning the subject matter of the witness' testimony and written or signed by the witness or given orally and stenographically or mechanically transcribed. As indicated in *State ex rel. Byrne v. Circuit Court, supra,* we see no policy reason to require that inspection be afforded to the defendant before the witness testifies. But after direct examination of the witness, upon request of the defendant out of the presence of the jury, the court should order the state to produce for inspection all such statements of the witness in any of the forms referred to.

". . .

"Counsel for the defense may point out to the court, out of the presence of the jury, what parts of the statements they desire to use. Use upon the trial may be permitted by the court if it determines that there are such inconsistencies between the testimony and the statements, or such variance between them (including omissions) as would tend to substantially impeach the witness' testimony. A stenographic record shall be made of these proceedings."

In *Napue v. Illinois* [4] (1959), 360 U. S. 264, 269, 270, 79 Sup. Ct. 1173, 3 L. Ed. 2d 1217, the United States Supreme Court stated:

"*First,* it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. [Cases cited.] The same result obtains when the State, although not soliciting false

---

[4] The United States Supreme Court reaffirmed *Napue* in *Giles v. Maryland* (1967), 386 U. S. 66, 87 Sup. Ct. 793, 17 L. Ed. 2d 737.

evidence, allows it to go uncorrected when it appears. [Cases cited.]

"The principal that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, *People v. Savvides*, 1 N. Y. 2d 554, 557; 136 N. E. 2d 853, 854–855; 154 N. Y. S. 2d 885, 887:

" 'It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. . . . That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.' "

At trial, Patricia Marquardt testified that she was with defendant when he committed the sport shop burglary and she saw defendant put some guns into the trunk of the car in which she was sitting. At the John Doe hearing she said that she did not go to the sport shop with the defendant when he burglarized that building, and did not see any of the guns stolen from that place. The court denied the defendant the right to use this testimony for "impeachment purposes." This was reversible error. Her testimony was the only "direct evidence" going to the sport shop burglary, and almost all of the circumstantial evidence offered rested on that testimony. The same is true with respect to the attempted impeachment of Robert Marquardt's testimony.

The guilt or innocence of the defendant actually turned upon the credibility of the witnesses. Both Marquardts were involved in the crimes for which the defendant was convicted. To deny the defendant the right of access and use of the John Doe testimony for impeachment purposes is a denial of due process of law and in this case prejudicial to the rights of the defendant.

Notwithstanding, the state argues that such testimony must be kept secret for the protection of the witnesses who testify at such hearings, and to render the witnesses more free in their disclosure. The state relies on *State ex rel. Jackson v. Coffey* (1963), 18 Wis. 2d 529, 546, 118 N. W. 2d 939, where this court stated that "secrecy" is a privilege of the witness and the state has a legitimate interest in maintenance of secrecy for a reasonable period of time. This is true, but as defendant correctly points out, the policy of secrecy is not at issue. Here the district attorney used the secret John Doe testimony of Robert and Patricia Marquardt as the basis for the criminal complaints. The "secrecy policy" is designed to preclude a defendant from opening up the entire John Doe once the prosecutor uses it as to one witness or one offense. The defendant in this instance only wanted to use part of the relevant testimony for "impeachment purposes." He has that right under due process of law. The "secrecy of the witness" is not infringed upon because Patricia and Robert Marquardt testified at trial and stated that they testified at the John Doe proceedings. The state no longer had a legitimate interest of secrecy in their testimony to be used for impeachment purposes. We hold the defendant has the right to access and use of such testimony for the limited purpose of impeachment under the guidelines set forth in *Richards, supra.* To interpret sec. 968.26, Stats., otherwise would render it unconstitutional.

*By the Court.*—Judgment and order reversed and a new trial ordered as to counts I and III of the information.