STATE of Wisconsin, Plaintiff-Respondent,

v.

Lafornia WEDGEWORTH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–563–CR. Argued January 7, 1981.*
*—Decided March 3, 1981.*

(Also reported in 302 N.W.2d 810.)

For the petitioner there was a brief by *Dennis P. Coffey* and *Coffey & Coffey,* and oral argument by *William M. Coffey,* all of Milwaukee.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Dorothy H. Dey,* assistant attorney general, and oral argument by *David J. Becker,* assistant attorney general.

WILLIAM G. CALLOW, J. Lafornia Wedgeworth (defendant) was convicted of one count of possession of a controlled substance, heroin, with intent to deliver, contrary to secs. 161.14(3)(k) and 161.41(1m)(a), Stats., and one count of possession of a controlled substance, marijuana, contrary to secs. 161.14(4)(k) and 161.41(3), in the circuit court for Milwaukee county, Hon. Marvin C. Holz presiding. On the first count he was sentenced to ten years in prison as a habitual offender pursuant to sec. 939.62, and on the second count to one year, both sentences to be served concurrently. The court of appeals affirmed the conviction.

On the day scheduled for the trial of this matter, the defendant's attorney, Dennis Coffey, moved the court for a continuance, stating as grounds that the defendant's primary attorney, William Coffey, was ill and hospitalized, and that the defendant would prefer to be represented by the other attorney. The court denied the motion and the matter proceeded to trial. One of the grounds raised on this review is that the denial of the continuance was an abuse of discretion.

At trial considerable evidence was admitted which had been gathered in a search of the defendant's residence on February 23, 1978, by city of Milwaukee police pursuant to a search warrant. The warrant was issued to search the premises located at 4221 North 24th Place, Milwaukee, for heroin and other drug paraphernalia. Among the items seized were quantities of heroin, lactose, marijuana, a coffee mill, razor blades, an Ohaus scale, a pouch containing $5,500 in currency, items of the defendant's clothing, a box of the defendant's personal papers, and three weapons—a .38-caliber pistol, a Luger pistol, and a 16-gauge shotgun. Detective Thomas McKale testified without objection from the defense as to the identification and discovery of the Luger and the shotgun in a closet in one of the bedrooms. Following that testimony Detective McKale was asked by the prosecutor:

"*Q.* Now, in your capacity as a detective with the Vice Squad for almost ten years, do you have an opinion as to the presence of these—this shotgun and this pistol in the house in conjunction with the other materials and other property that you found there?"

Following an objection, later placed upon the record as based upon lack of foundation, materiality, and relevancy, the detective answered:

"*A.* Yes. Well, on numerous occasions when executing search warrants for people involved in the distribution of controlled substances we have encountered guns and gunfire."

The defendant claims it was error to admit the evidence of the presence of weapons at the premises.

Another detective, Ronald Kuehn, testified to a conversation he had with the defendant at the police station several days after the search. The admissibility of the defendant's statements were the subject of a *Goodchild*[1] hearing at which Kuehn testified that on February 28, 1978, he had a ten- to fifteen-minute conversation with the defendant during which the defendant was advised of his constitutional rights and then asked some questions about his employment and educational background. The defendant answered these questions. Detective Kuehn stated, "then I asked him where he lived, at which time he stated 4220, then he stopped and stated he was not to answer this question on advice of his attorney." The defendant objected to the admissibility of this testimony by Detective Kuehn on the ground that the defendant's partial statement of his address was involuntary and did not constitute a knowing waiver of his *Miranda-Goodchild* rights. The trial court ruled that the partial statement of the defendant made to Detective Kuehn was made voluntarily and was admissible but precluded any testimony relating to the defendant's refusal to answer on the advice of his attorney. Thus at trial Detective Kuehn testified, "I asked him his home address at which time he stated 4220, and stopped." The defendant argues that it was error to admit this testimony.

Certain personal papers and belongings of the defendant, many of which contained the defendant's name and address or otherwise linked him to the premises, were also admitted at trial to which the defendant objected as beyond the scope of the search warrant and illegally seized. The trial court overruled the objection, and the defendant now contends that the admission of these items was error.

---

[1] *State ex rel. Goodchild v. Burke*, 27 Wis.2d 244, 133 N.W.2d 753 (1965), *cert. denied* 384 U.S. 1017–18 (1966).

In the trial the defendant did not testify, but the defense intended to use the testimony of Janice Hill, the defendant's girl friend, who at the time of the search also lived at 4221 North 24th Place. In an offer of proof made outside the presence of the jury, Hill testified on direct examination that during the month of February, 1978, she was a heroin addict and that she had heroin on the premises for her personal use. On cross-examination by the prosecutor, Hill was asked whether on the date of the search she had any heroin or marijuana on the premises. Hill exercised her right under the fifth amendment and declined to answer. That same response was given each time the prosecution asked any question which attempted to establish whether the particular drugs found on the premises during the search belonged to Hill. Hill did testify, however, that certain other drug paraphernalia found on the premises was hers rather than the defendant's. The trial court excluded Hill's testimony in its entirety, and the defendant claims exclusion of Hill's testimony was error.

On this review, as before the court of appeals, the defendant raises five issues:

I. Whether it was error to deny the defendant's motion for continuance;

II. Whether it was error to admit Detective Kuehn's testimony concerning the defendant's statements made at the station;

III. Whether it was error to admit into evidence the weapons found on the premises;

IV. Whether it was error to admit into evidence the personal papers and records of the defendant;

V. Whether it was error to prevent the testimony of Janice Hill.

## I.  CONTINUANCE

The record suggests that the matter of a continuance was brought to the trial court's attention sometime dur-

ing the week prior to the day the trial was scheduled to begin. However, the motion was not formally presented to the court until the morning of the day set for trial. In denying the continuance, the trial court indicated it was too late to schedule another trial and that he was reluctant to "waste a trial date." The defendant argues that the court's denial of the motion for continuance was an abuse of discretion because it denied the defendant his right to representation by counsel of his choosing and also because the decision was based exclusively upon expediency and failed to take into consideration other relevant factors.

The decision to grant or deny a continuance is a matter within the discretion of the trial court. *State v. Wollman,* 86 Wis.2d 459, 468, 273 N.W.2d 225 (1979); *Phifer v. State,* 64 Wis.2d 24, 30, 218 N.W.2d 354 (1974). However, the denial of a continuance may raise questions relative to a defendant's sixth amendment right to counsel and fourteenth amendment right to due process of law. In *Wollman* we stated:

"In determining whether a court has abused its discretion by the denial of a continuance, a single inquiry is to be made. This inquiry requires the balancing of the defendant's constitutional right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice. As in all reviews of alleged abuse of trial court discretion, this balancing must be done in light of all the circumstances that appear of record. *Phifer, supra* at 31; *Ungar, supra* at 575; *Avery v. Alabama,* 308 U.S. 444, 446 (1940); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir. 1975); *United States v. Miller,* 508 F.2d 544, 452 [sic] (7th Cir. 1974); *United States v. Knight,* 443 F.2d 174 (6th Cir. 1971)." 86 Wis.2d at 468.

The application of this balancing of interests involves the use of six factors previously adopted by this court:

"1. The length of the delay requested;
"2. Whether the 'lead' counsel has associates prepared to try the case in his absence;

"3. Whether other continuances had been requested and received by the defendant;

"4. The convenience or inconvenience to the parties, witnesses and the court;

"5. Whether the delay seems to be for legitimate reasons; or whether its purpose is dilatory;

"6. Other relevant factors."

*Phifer v. State,* supra at 31, citing *Giacalone v. Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971).

■

In this case the length of the delay sought was from November 27, 1978, until January 2, 1979, or about five weeks. We, like the court of appeals, do not feel this is an unreasonable request, particularly in view of the reason for which it was sought—the illness and hospitalization of the defendant's "lead" counsel, William Coffey. From the record before us we have no reason to suspect that the continuance was sought as a dilatory tactic or for an illegitimate purpose, nor does it appear that the defendant had sought any previous continuances. Although the defendant's motion indicates that he desired to be represented by William Coffey, Dennis Coffey appeared as defense counsel at both the preliminary examination and the arraignment. Moreover, the defendant has not argued that he received inadequate representation at trial. It is also significant that, even though Dennis Coffey had an opportunity to make a record of specific reasons why he could not provide adequate representation, no such record was made. Finally, the lateness of the request certainly would have inconvenienced the court, as the court expressed when it denied the motion. Defense counsel had an opportunity to present reasons why the request could not have been made sooner, but none were offered. This is not to say that any such explanation would have been persuasive, but it might fairly be assumed that had there been some compelling reasons they would have been mentioned.

The defendant argues that the continuance should have been granted so the defendant could be represented by the attorney in whom he had confidence. To deny the continuance, it is argued, is to minimize the importance of the "trust inherent in the attorney-client relationship." In *Phifer* we said:

"The sixth amendment to the United States Constitution provides that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense. However, the amendment does not concern itself with who the counsel may be or how the counsel may be selected. In order to implement the object of the sixth amendment, if a defendant wishes to hire his own counsel, he must be afforded a fair opportunity and reasonable time to secure counsel of his own choice. The relationship between an attorney and his client is a highly confidential one, demanding personal faith and confidence in order that they may work together harmoniously. However, the accused's right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice. It cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice and deprive such courts of their inherent power to control the same." (Footnotes omitted.) 64 Wis.2d at 29–30.

One federal court observed that the right to choose counsel "merely informs judicial discretion—it does not displace it." *United States v. Dinitz,* 538 F.2d 1214, 1219, (5th Cir. 1976), *rehearing denied* 542 F.2d 1174, *cert. denied* 429 U.S. 1104 (1977). In this case we are not dealing with a defendant's request for a continuance in order to go out and secure the services of other counsel because of dissatisfaction with present representation. Instead, the defendant's request was for a delay until William Coffey would be able to resume his representation; and while the motion was made for a time certain, there was no indication in the record that the time re-

quested would be sufficient. In view of the fact that Dennis Coffey had made previous appearances in this case on behalf of the defendant, the trial court's decision to proceed as scheduled cannot be described as an arbitrary denial of the defendant's right to his choice of counsel. Accordingly, in light of all the facts and circumstances of the case, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a continuance.

## II.   ADMISSIBILITY OF THE DEFENDANT'S PRETRIAL STATEMENT

Prior to trial a *Goodchild* hearing was held to determine whether the defendant had been properly advised of his rights and whether the defendant's statement concerning his place of residence was voluntarily made and thus admissible. The trial court concluded that the defendant had been properly advised of his rights and that the partial statement "4220" was voluntarily made. We have stated that the findings and conclusions of a trial court in a *Goodchild* hearing will not be upset unless they are against the great weight and clear preponderance of the evidence. *State v. Hockings,* 86 Wis.2d 709, 722, 273 N.W.2d 339 (1979) ; *State v. Verhasselt,* 83 Wis.2d 647, 653, 266 N.W.2d 342 (1978) ; *Norwood v. State,* 74 Wis. 2d 343, 364, 246 N.W.2d 801 (1976) ; *McAdoo v. State,* 65 Wis.2d 596, 605, 223 N.W.2d 521 (1974).

At the hearing Detective McKale testified that he was present either in the office of the district attorney or the vice squad on February 28, 1978, at approximately 12:30 p.m. when the defendant, accompanied by his attorney, surrendered himself. McKale did not recall being instructed by the defendant's lawyer that the defendant was not to be questioned. Detective Kuehn testified that on February 28, 1978, at approximately 12:30 p.m., he

had a conversation with the defendant which lasted ten to fifteen minutes. Kuehn stated that he advised the defendant of his rights and asked whether the defendant understood each of the rights, to which the defendant replied that he did understand. Kuehn testified that the defendant at that time appeared to be in a normal condition and not intoxicated. After advising the defendant of his rights, Kuehn testified that he asked the defendant the extent of his education and that the defendant told him he was a graduate of West Division High School in Milwaukee. Kuehn asked whether he read and understood the English language, and the defendant responded that he read, understood, and wrote it. Kuehn testified that the defendant also told him he was employed at Ethan Allen Boy's Home but was on leave. Kuehn then testified, "I asked him where he lived, at which time he stated 4220, then he stopped and stated he was not to answer this question on advice of his attorney."

In *Norwood, supra* at 463–65, we said:

"To be admissible into evidence, an inculpatory statement must be the voluntary product of a free and unconstrained will, reflecting deliberateness of choice. *Pontow v. State* (1973), 58 Wis.2d 135, 137, 205 N.W.2d 775. The question is whether it was obtained under such circumstances that it represents the uncoerced free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice. *Roney v. State* (1969), 44 Wis.2d 522, 533, 171 N.W.2d 400.

"Whether or not a statement is voluntary and not the result of coercion depends on the totality of circumstances surrounding the statement. *Grennier, supra,* 210; *McAdoo, supra,* 605; *Brown v. State* (1974), 64 Wis.2d 581, 585, 219 N.W.2d 373. A careful balancing must be made between the personal characteristics of the declarant and the pressures to which he was subjected in order to induce the statement. *State v. Wallace* (1973), 59 Wis.2d 66, 81, 207 N.W.2d 855.

"In *Schneidewind, supra,* 117, this court set forth the relevant factors which must be considered on both sides of the balance:

■

" '. . . Courts must look to the "totality of the circumstances" in determining whether a confession or admission can be called voluntary. A court must examine such factors as the age of the accused, *Haley v. Ohio* (1948), 332 U.S. 596, 68 Sup Ct. 302, 92 L. Ed. 224; the education and intelligence of the accused, *Townsend v. Sain* (1963), 372 U.S. 293, 83 Sup. Ct. 745, 9 L. Ed.2d 770; the conditions under which the interrogation took place, *Fay v. Noia* (1963), 372 U.S. 391, 83 Sup. Ct. 822, 9 L. Ed.2d 837; the physical and mental condition of the accused, *Blackburn v. Alabama* (1960), 361 U.S. 199, 80 Sup. Ct. 274, 4 L. Ed. 242; and any inducements, methods and stratagems which were used to persuade the accused to confess, *Lynumn v. Illinois* (1963), 372 U.S. 528, 83 Sup. Ct. 917, 9 L. Ed.2d 922; and what the responses were to his requests for counsel, *Haynes v. Washington* (1963), 373 U.S. 503, 83 Sup. Ct. 1336, 10 L. Ed.2d 513.' "

The defendant argues that, in light of the totality of the circumstances, the partial statement, "4220," was involuntary and that it reflected the defendant's deliberate choice to follow the advice of counsel and not answer. We cannot accept this argument.

■

The defendant appeared voluntarily at the police station in the presence of his attorney and was advised of his constitutional rights. He does not now claim he was improperly or insufficiently so advised. Thereafter, the defendant spoke freely of his educational background, his ability to read, speak, and write English, and his employment. There is no suggestion that detectives used improper methods or that the conditions prevalent during the questioning were oppressive. Essentially the problem is whether the defendant's mid-answer realization that it might not be in his best interests to reveal his place of residence renders that portion he had already answered involuntary. We think not. It is improper to equate imprudence with involuntariness. Although the defendant may later regret what he has said, that alone does not alter the fact that when it was spoken it was

" 'the voluntary product of a free and unconstrained will.' " *Pontow v. State,* 58 Wis.2d 135, 137, 205 N.W.2d 775 (1973). On the basis of the record before us, we hold that the finding of voluntariness by the trial court is clearly not contrary to the great weight and clear preponderance of the evidence.

The defendant next contends that Detective Kuehn's testimony at trial to the effect that the defendant said "4220, and stopped" was an impermissible comment upon the defendant's exercise of his fifth amendment right against self-incrimination. Our cases have consistently held it improper to comment upon a defendant's choice to remain silent at or before trial. *Odell v. State,* 90 Wis.2d 149, 152, 279 N.W.2d 706 Per Curiam (1979); *Rudolph v. State,* 78 Wis.2d 435, 441–42, 254 N.W.2d 471 Per Curiam (1977); *Reichoff v. State,* 76 Wis.2d 375, 379–80, 251 N.W.2d 470 (1977); *State v. Johnson,* 60 Wis.2d 334, 342–44, 210 N.W.2d 735 (1973). In *Reichoff* we characterized the improper testimony as "manifestly designed to demonstrate a tacit admission of guilt on the part of the defendant. The purpose of the evidence was to allow the jury to draw an inference of defendant's guilt from the defendant's silence." 76 Wis.2d at 378. We do not think this characterization can be made of Detective Kuehn's testimony in this case. At the *Goodchild* hearing Kuehn's testimony included a direct reference to the defendant's choice to remain silent upon the advice of counsel. The trial court, however, after finding the defendant's statement admissible, instructed the prosecution that "any reference to the fact that the defendant stated, 'My attorney advised me not to say anything,' or whatever that was," would be improper. At trial Kuehn testified only that in response to a question about his address the defendant said "4220, and stopped." The words "and stopped" do not imply the defendant's

guilt, nor do they " 'turn on the red light of potential prejudice' " respecting the defendant's right to remain silent. *Reichoff, supra* at 380. Rather, we believe the words were merely a necessary explanation for the partial answer which, if left unexplained, would have suggested the defendant lived at an address other than the one involved in the case. Because we view this language as explanatory and not intended to suggest "a tacit admission of guilt on the part of the defendant," *Reichoff, supra* at 378, we conclude that it did not constitute an impermissible comment upon the defendant's exercise of his fifth amendment rights.

### III. *ADMISSIBILITY OF EVIDENCE OF WEAPONS*

At trial Detective McKale was asked to identify three weapons along with other items seized from the defendant's residence during the search. Defense counsel did not object as the weapons were described. When McKale was asked whether he had an opinion relative to the presence of the weapons in relationship to the other items found at the defendant's residence, defense counsel objected, but he did not place the grounds for his objection on the record at that time. Following a sidebar conference, defense counsel stated that he was reserving the right to make a record of the grounds for his objection at a later time, and the prosecuting attorney directed McKale to answer the question. McKale stated that, on previous occasions in the execution of search warrants in narcotics cases, he had encountered guns and gunfire. Later, out of the presence of the jury, defense counsel recorded the basis of his objection as lack of foundation, materiality, and relevancy. The trial court indicated at that time that the objection had been overruled, although that ruling was not made on the record at the time the objection was raised and the answer permitted.

We disapprove the practice of objecting but reserving the right to state grounds therefor until a later time. The record does not reflect that the grounds asserted during the sidebar, if any, were the same as those later recorded out of the jury's presence or that the court's ruling was made in consideration of the same grounds later asserted. It is fundamental to sound trial practice that objections must be made promptly and "in terms which apprise the court of the exact grounds upon which the objection is based." *Holmes v. State*, 76 Wis.2d 259, 271, 251 N.W.2d 56 (1977). *See also: State ex rel. Hussong v. Froelich*, 62 Wis.2d 577, 602–03, 215 N.W.2d 390 (1974); *State v. Hoffman*, 240 Wis. 142, 149–50, 2 N.W.2d 707 (1942). The trial court should not be placed in a situation in which, having made an evidentiary ruling on grounds not in the record, counsel has the opportunity to present different grounds on the record which, had they been asserted earlier, might have altered the court's ruling. While the court in such a situation might be able to instruct the jury to disregard the evidence, as a practical matter words once spoken cannot be recalled. We do not know what happened in this case; the record does not disclose what transpired at the sidebar, nor did defense counsel indicate later that he was merely reiterating grounds earlier stated. Counsel who rely on unrecorded sidebar conferences do so at their own peril. On the basis of this record, we conclude that counsel's objection failed to state any grounds with particularity and that such failure amounted to a waiver of the objection.

Although objections which have been waived are not reviewable as a matter of right, this court may consider such objections if it chooses. *Ollinger v. Grall*, 80 Wis. 2d 213, 223, 258 N.W.2d 693 (1977). The question of the admissibility of weapons evidence under the circum-

stances presented in this case is of sufficient importance to warrant our consideration, and thus we undertake an analysis of the issue notwithstanding the insufficiency of defense counsel's objection.

The defendant argues that the weapons testimony was irrelevant because it "relates to the Detective testifying as to what others, not the defendant, have or had done at other times." The court of appeals declined to reach the merits of this issue, concluding that the proper objection would have been pursuant to sec. 904.04 (2), Stats., "Other Crimes, Wrongs, or Acts," and that since the defendant did not raise that objection the issue was waived. The defendant insists that, because the only testimony claimed to be objectionable is the actual statement of McKale concerning what he had encountered in the execution of other search warrants, no other crimes, wrongs, or acts of the defendant were involved, and thus the proper objection was the one he asserted—relevancy.

We do not view the evidentiary question as narrowly as does the defendant. Taken in isolation, McKale's prior weapons experiences with other drug cases not involving the defendant would no doubt be irrelevant, since under any expression of relevance the testimony would not be germane or logically related to the crime charged. *Whitty v. State*, 34 Wis.2d 278, 291–92, 149 N.W.2d 557 (1967). *See also:* Sec. 904.01, Stats. But the testimony in question was not offered, nor should it be viewed, in isolation. It was closely related to McKale's other testimony concerning the discovery of the guns at the defendant's residence. Thus we believe the relevancy of McKale's previous encounters with guns and gunfire is inextricably linked to the relevancy of the other testimony and evidence of the guns found at the defendant's residence.

We do not agree with the court of appeals that the defendant's proper objection would have been under sec.

904.04 (2), Stats. This evidence did not deal with a crime, wrong, or act of the defendant except insofar as the presence of any item, not in itself unlawful, may suggest the act which caused it to be there. The defendant relies upon *State v. Spraggin,* 77 Wis.2d 89, 252 N.W.2d 94 (1977), in which we held inadmissible evidence of the presence of stolen property and weapons in the residence of the defendant in a prosecution for aiding and abetting the delivery of heroin. That case dealt with sec. 904.04 (2), and properly so, because the stolen property itself was evidence of another crime, and the weapons included two sawed-off shotguns, the possession of which was unlawful. The defendant argues that *Spraggin* should be read to express a general prohibition on the admissibility of weapons in drug cases and points to the following language in that opinion:

"Evidence of the weapons and stolen goods here is not an individual manifestation of the crime charged; this evidence does not show a series of links in the specific chain which prove the guilt of the offense charged. This evidence indicates that the defendant's home was a den of iniquity and that she had a propensity and disposition toward criminal activity. The evidence was designed to convince the jury that the defendant's possession of weapons and stolen goods was indicative of her guilt of the act charged in this case—intentionally aiding and abetting in the delivery of heroin. No specific connection was shown between this evidence and the defendant's alleged criminal acts. Weapons and stolen goods may constitute the protection and currency necessary in the realm of heroin trafficking, but the State did not demonstrate in any manner that this particular evidence was so employed. The inference of such use must be supported by more than the mere introduction of these exhibits into evidence and the broad assertion that guns and stolen goods are commonly used by those in the heroin trade." *Id.* at 99–100.

It must not be overlooked that *Spraggin* dealt with a sec. 904.04 (2) objection and that the evidence in question

did deal with other crimes of the defendant. *Spraggin* should be confined to those facts, not extended to cover circumstances not clearly within the scope of sec. 904.04 (2).

In this case the defendant was charged with a violation of sec. 161.41(1m) (a), Stats., under which the state has the burden of proving intent to manufacture or deliver a controlled substance, here, heroin. In recognition of the difficulties inherent in proving intent, that statute also provides:

"Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation."

At trial the evidence of intent was circumstantial. The quantity of heroin seized, most of it residues, was conceded by the state to be insufficient in itself to prove intent to deliver. Other evidence of intent was offered in the form of drug paraphernalia, and the state offered testimony connecting some of the paraphernalia to the customary activities and practices of drug dealers. Evidence was offered relative to a large quantity of cash found at the defendant's residence, to the heavy fortification on the windows and rear door of the premises, and to the guns found on the premises. As a general matter we have recognized that criminal convictions may be supported by circumstantial evidence. *Clark v. State*, 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974). But like other evidence, it must be relevant to be admissible. Sec. 904.02, Stats.

In *Oseman v. State*, 32 Wis.2d 523, 527, 145 N.W.2d 766 (1966), the defendant's identity was established by circumstantial evidence which was objected to as ir-

relevant. In upholding the admissibility of this evidence, we cited 31A C. J. S., *Evidence,* sec. 161, 441–42, as follows:

"The trial court usually has considerable discretion as to the latitude of [the admissibility of] circumstantial evidence, and great latitude generally is allowed in admitting it, and this is especially true where the circumstances are such that direct evidence is lacking." (Footnotes omitted.)

In *Hicks v. State,* 47 Wis.2d 38, 43, 176 N.W.2d 386 (1970), we stated:

"As to the relevancy of evidence, this court in *Berg v. State, supra,* at page 739, again approved the following statement from 1 Wharton's Anderson, *Criminal Evidence* (12th ed.), pp. 284–287, sec. 148:

" ' " 'Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, *any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts.'* (Emphasis supplied.)" ' "

We believe the testimony and other evidence relating to the weapons found in the defendant's residence were part of a chain of facts by which the state sought to have the jury infer that the defendant possessed heroin with the intent to deliver it. The chain included the entire assortment of drugs and paraphernalia as well as the presence of money and physical fortifications of the

residence. As Detective McKale stated in his testimony, heroin is an expensive commodity. The defendant could not rely upon the police to protect him in his business transactions or upon the courts to enforce his drug-related obligations. McKale's testimony is indicative of the role of self-help and self-protection in the business of drug trafficking, and we believe the evidence of the presence of guns in the defendant's residence, in conjunction with the other accoutrements of heroin trafficking, had some tendency to make it more probable than it would have been absent such evidence that the defendant did not merely possess heroin but possessed it with the intent to deliver.

We conclude that the evidence relative to the presence of weapons in the defendant's premises, as well as McKale's statement concerning his previous encounters with guns and gunfire, was relevant and properly admitted. That is not to say, however, that such evidence will in every case be admissible. While the defendant did not raise an objection based upon sec. 904.03, Stats., we do not foreclose the possibility that in some other case the probative value of such evidence may be outweighed by its prejudicial effect or that it might be needlessly cumulative in the presence of other more probative evidence and therefore could be excluded.

## IV. ADMISSIBILITY OF THE DEFENDANT'S PERSONAL PAPERS

■

The defendant argues that it was error to admit into evidence certain personal items and papers, some containing the defendant's name and showing his address as the same as that of the premises searched and others tending to connect the defendant to the premises in other respects. These items include a man's suit, shirt, and

pair of shoes, a receipt from ABC Lock Company, re-receipts from Sears, a photograph of the defendant, two letters addressed to the defendant at that address, a speeding citation issued to the defendant, W-2 forms naming the defendant, a box of blank checks containing the defendant's name and address, and a promissory note issued to the defendant in the amount of $1,800. At trial Detective McKale identified these items, describing them and the manner and location in which they were found. No objections were heard from defense counsel during this testimony. At the close of the state's case, when the state moved the admission of all the state's exhibits, the defense objected to these items as beyond the scope of the search warrant and thus illegally seized. The trial court ruled that, under sec. 971.31(2), Stats.,[2] the objection had been waived. No pretrial suppression motion was made relative to these items, nor does the defendant claim surprise by the use of this evidence at trial.

The defendant contends that *State v. Lenarchick*, 74 Wis.2d 425, 247 N.W.2d 80 (1976), supports the argument that pretrial suppression of these items would not have been possible, and thus the objection was born upon the state's use of them. We do not see the merit of this position. *Lenarchick* merely held that no harm arose from a failure to order a pretrial suppression hearing with respect to photographs which were never admitted into

---

[2] Sec. 971.31(2), Stats., provides:

(2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. The motion to suppress evidence shall be so entertained with waiver of jeopardy when it appears that the defendant is surprised by the state's possession of such evidence.

evidence anyway. It clearly does not suggest that illegally seized evidence may not be suppressed. Moreover, even if it were as the defendant claims, the defendant failed to object as McKale testified regarding the items, which was the state's first use of the evidence. Finally, regardless of the defendant's failure to object, it is clear under our decisions in *Morales v. State,* 44 Wis.2d 96, 106–08, 170 N.W.2d 684 (1969), and *Myers v. State,* 60 Wis.2d 248, 261–62, 208 N.W.2d 311 (1973), that the defendant's objection is without merit. In *Myers* we adopted the following test for determining whether items not particularly mentioned in a search warrant may be properly seized:

" '. . . An officer may seize any property which is evidence of a crime, whether or not different from the crime by which the search was prompted, if: (1) the evidence is discovered in the course of a lawful search, whether initiated by a valid search warrant, a valid arrest warrant, circumstances justifying a lawful warrantless search, or circumstances justifying a lawful warrantless arrest, (2) the evidence in itself or in itself with facts known to the officer prior to the search, but without the necessity of subsequent development of additional facts, provides a connection between the evidence and criminal activity, (3) the evidence is discovered in the physical area properly searchable within the purposes for which the search was initiated, and (4) the evidence is discovered while the officer is actually searching for objects within the purpose for which the search was initiated.' " *Id.* at 261, quoting *United States v. McDonnell,* 315 F. Supp. 152, 168 (D.C. Neb. 1970).

On the record before us it is clear these four criteria have been satisfied, and thus the items in question were legally seized during the February 23, 1978, search of the defendant's premises. They could not be found objectionable on that basis.

## V. *THE TESTIMONY OF JANICE HILL*

Janice Hill testified as a defense witness in an offer of proof outside the presence of the jury. The essence of her testimony on direct examination was that, at the time the defendant's premises were searched, she was living there, was a heroin addict, and was using heroin at that location on a daily basis. On cross-examination by the state, Hill responded to several questions by taking the fifth amendment. The specific questions she declined to answer were as follows:

"*Q.* Ms. Hill, on February 23, 1978 did you have any drugs in your apartment at 4221 North 24th Place?

"*Q.* And did you have any heroin or marijuana on the premises on February 23, 1978?

"*Q.* Okay. And isn't it a fact, Miss Hill, that you were dealing drugs out of your address both on February 23, 1978 and previously to that?

"*Q.* And isn't it a fact that you—you and Lafornia Wedgeworth were together dealing heroin out of your residence both on February 23, 1978 and before that?

"*Q.* Isn't it a fact that heroin sitting next to that bottle in that exhibit is yours and was in your apartment on February 23, 1978?

"*Q.* . . . Isn't that your marijuana that was present in your residence at 4221 North 24th Place on February 23, 1978?

"*Q.* Isn't it a fact that even after February 23, 1978 you kept heroin in your apartment?

"*Q.* When was the last time you used heroin and had it in your house?

"*Q.* What kind of cutting agent did you use on your heroin? . . . February 23, 1978 or before that."

In the remainder of her testimony Hill stated she owned the coffee grinder, the weighing scale, the pouch containing $5,500, and other paraphernalia found on the premises, and also that she installed the fortifications—grated windows and rear door—in order to protect

against burglars. The trial court, after argument from counsel, concluded that Hill exercised the fifth amendment "on very, very critical questions" and decided not to permit Hill to testify. The defendant argues that in so doing the trial court abused its discretion and deprived the defendant of his constitutional right to present witnesses in his behalf. We considered this question in *Peters v. State,* 70 Wis.2d 22, 233 N.W.2d 420 (1975). In *Peters* we confirmed the rule in *State v. Monsoor,* 56 Wis.2d 689, 203 N.W.2d 20 (1973), that a trial court may strike the testimony of a witness who refuses to answer relevant questions upon cross-examination. Recognizing that *Monsoor* and *Peters* dealt with defense witnesses but that *Monsoor* rested upon cases dealing only with prosecution witnesses, we said:

"Yet this difference does not render invalid or insufficient the test of whether the answered questions are relevant to the subject matter of the inquiry. The defendant's right to present witnesses in his behalf is, as said in *Chambers v. Mississippi,* qualified by the necessity of compliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' The *Monsoor* rule is such a rule because denial of prosecutorial cross-examination or relevant and material matters would detract substantially from the reliability of the testimony in question and from the accurate determination of guilt or innocence." (Footnote omitted.) 70 Wis.2d at 37.

The questions Hill declined to answer were plainly both material and relevant. Her testimony created the clear impression that the drugs found at the apartment on the day of the search were hers, and that impression was strengthened by her testimony that she owned much of the paraphernalia gathered under the search warrant. Yet her refusal on cross-examination to answer specifically whether the drugs found on the premises that day belonged to her substantially detracted from the re-

liability and accuracy of her testimony. Like the questions the witness in *Peters* declined to answer, the questions set forth above are directly related to the crimes with which the defendant was charged, and we conclude there was no abuse of discretion in barring Hill's testimony.

The defendant argues that in this case the court "should have fashioned a response to the situation which allowed the defendant to use the testimony the witness gave." As we read Hill's direct testimony, we cannot see much that would have provided the court with such a choice. It would have been impossible for the state to test the suggestion implicit in her direct testimony that the drugs the police found on the premises were hers without her answers to the questions she chose not to answer. The trial court had no choice but to exclude the whole of her direct testimony.

*By the Court.*—The decision of the court of appeals is affirmed.

COFFEY, J., took no part.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The prosecutor asked Officer McKale:

"*Q.* Now, in your capacity as a detective with the Vice Squad for almost ten years, do you have an opinion as to the presence of these—this shotgun and this pistol in the house in conjunction with the other materials and other property that you found there?"

Defense counsel objected. The grounds for the objection were lack of relevancy, materiality and foundation. The court allowed the officer to testify as follows:

"*A.* Yes. Well, on numerous occasions when executing search warrants for people involved in the distribution of controlled substances we have encountered guns and gunfire."

The majority considers the objection on its merits and so do I. The majority concludes that McKale's testimony is relevant in the instant case. I disagree.

The determination of relevancy can be a difficult task. Before considering the merits of the objection in the case at bar I think it essential to set forth the process to be used to determine relevancy.

The general rule is that all relevant evidence is admissible and that evidence which is not relevant is not admissible. Rule 904.02, Stats. 1979–80. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 904.01, Stats. 1979–80. Accordingly the test of relevancy is does the evidence alter the probability of the existence of the fact to be proved.

Though easily stated the test is difficult to apply. Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and the fact to be proved. Evidence is relevant if there is a relation between the proffered evidence and a fact that is of consequence to the determination of the action, that is, a fact important under the substantive law of the crime.[1] James, *Relevancy, Probability and the Law*, 29 Calif. L. Rev. 689, 696, n. 15 (1941), in *Selected Writings on Evidence and Trial*, 610, 615, n. 15 (Foyer ed. 1957), cited in 59 Wis.2d R69.

To determine relevancy we must apply principles of experience, science, and reason to discern the relation, if it exists, between the evidence offered and a fact which either plaintiff or defendant must prove or dis-

---

[1] *Shapiro v. Klinker*, 257 Wis. 622, 44 N.W.2d 622 (1951). *See* comments to Rule 904.01, Stats. 1979–80, 59 Wis.2d Rp. 67–70.

prove to prevail in the prosecution or defense of the matter.[2]

Whether the proffered evidence is relevant is determined by a process consisting of the following three steps: (1) describing the item of evidence proffered; (2) stating the "fact of consequence to the determination of the issue," which fact we shall call the consequential fact, Rule 904.01, Stats. 1979–80; and (3) setting forth the analysis by which the trier of fact is to infer the consequential fact from the proffered evidence. The third step, explaining how the proffered evidence may tend to prove or disprove the consequential fact, enables the trial court to determine whether the evidence actually alters the probability of the existence of the consequential fact. Because the determination of relevancy depends on reason, science, and human experience, people may disagree whether there is a relation between the evidence (the fact known) and the consequential fact to be proved. The trial court in ruling on relevancy is vested with discretion which accommodates both variance in the application of reason and science and differences in the human experience. *Oseman v. State,* 32 Wis.2d 523, 527, 145 N.W.2d 766 (1966). Yet to vest discretion is not to abandon inquiry and analysis. *State v. McCleary,* 49 Wis.2d 263, 182 N.W.2d 512 (1971).

Where relevancy is readily apparent, the trial court may simply announce its ruling on the objection without extended analysis. When an objection is made and relevancy is not readily apparent, the proponent of the evidence when arguing its admissibility, and the trial court, when later ruling on the objection, should set forth on the record the relevancy relationship. On review, when

---

[2] *Hicks v. State,* 47 Wis.2d 38, 176 N.W.2d 386 (1970); *Zebrowski v. State,* 50 Wis.2d 715, 185 N.W.2d 545 (1971).

the relevancy is not readily apparent, an appeal court should set forth its analysis.[3]

In the instant case, the majority and I agree that relevancy is not readily apparent. The majority correctly concludes that "[t]aken in isolation, McKales' prior weapons experiences with other drug cases not involving the defendant would no doubt be irrelevant, since under any expression of relevance the testimony would not be germane or logically related to the crime charged." (*Supra,* p. 529.)

The majority concludes that McKale's testimony is relevant to prove defendant's intent to deliver heroin only in connection with what the majority calls "a chain of facts." These facts are set forth by the majority opinion which is quoted below and include the guns, the entire assortment of drugs and paraphernalia at the residence, money at the residence, the bars on the windows and door of this ground floor apartment, the high cost of heroin, and the inference drawn from the bars on the windows and door that the occupant of the apartment is resorting to self-help and self-protection. The majority sets forth the chain of facts to be used to make McKale's testimony relevant as follows:

". . . But the testimony in question was not offered, nor should it be viewed, in isolation. It was closely related to McKale's other testimony concerning the discovery of the guns at the defendant's residence. Thus we believe the relevancy of McKale's previous encounter with guns and gunfire is inextricably linked to the relevancy of the other testimony evidence of the guns found at the defendant's residence . . . We believe the testimony and other evidence relating to the weapons found in the defendant's residence were part of a chain of facts by which the state sought to have the jury infer that the defendant possessed heroin with the intent to deliver it. The chain included the entire assortment of drugs and

[3] 1 Weinstein's *Evidence* par. 401[08], pp 401–29–30; par. 401 [09], pp. 401–31–37.

paraphernalia as well as the presence of money and physical fortifications of the residence. As Detective McKale stated in his testimony, heroin is an expensive commodity. The defendant could not rely upon the police to protect him in his business transactions or upon the courts to enforce his drug-related obligations. McKale's testimony is indicative of the role of self-help and self-protection in the business of drug trafficking, and we believe the evidence of the presence of guns in the defendant's residence, in conjunction with the other accoutrements of heroin trafficking, had some tendency to make it more probable than it would have been absent such evidence that the defendant possessed heroin with the intent to deliver." (*Supra,* pp. 529, 532, 533.)

The majority concludes but does not explain how the facts in the "chain of facts" operate to make McKale's testimony which is conceded to be irrelevant standing alone have a tendency to make the existence of defendant's intent to deliver heroin more probable than it would be without the testimony. To test the majority's conclusion I will use the three-step analysis set forth above.

The first step, as stated before, is to identify the proffered evidence. Here it is McKale's statement. McKale's statement is ambiguous and subject to different interpretations. McKale refers to "numerous occasions" and conjunctively describes encountering "guns and gunfire" in executing search warrants for persons involved in drug distribution. If McKale's statement is to have application to this case, the majority must by inference be interpreting the statement to mean that on the basis of his ten years' experience on the narcotic squad he concludes that numerous persons who intend to deliver heroin (hereafter called heroin dealers) have guns and engage in gunfire.[4]

---

[4] Whether McKale's statement lends itself to this interpretation is open to question. His testimony was stated in the general terms of his experience on "numerous occasions when executing search warrants." His testimony was not in terms of the nar-

The second step, as stated before, is to identify the consequential fact to be proved. Here it is that the defendant intended to deliver heroin.

The majority correctly concludes that it cannot infer from the proffered testimony the consequential fact that the defendant intended to deliver heroin. The evidence that the defendant had guns does not establish the relation between McKale's testimony and the consequential fact that the defendant is a heroin dealer. The evidence that numerous heroin dealers have guns and that the defendant has guns does not have any tendency to make the existence of defendant's intent to deliver heroin more probable than it would be without this evidence. Guns may be possessed for a variety of purposes, legal and illegal. Numerous people have guns: numerous hunters

---

cotic squad's experiences with all persons arrested or convicted for selling drugs. This omission is critical since the inference sought was that sellers have guns, not persons against whom search warrants are issued upon probable cause to believe that the person is involved in drug distribution. His testimony was in terms of "people involved in the distribution of controlled substances." The statement could encompass a user or seller, both of whom are involved in the distribution of drugs. Moreover, his testimony was not in terms of heroin nor even in terms of schedule I controlled substances. He did not testify whether the frequency of gun possession or use varied among dealers in different drugs or depended in any way on the quantity of drugs seized. His testimony was in terms of having "encountered guns and gunfire." His testimony was not clear as to whether guns and gunfire are used as synonyms or refer to separate events occurring during the course of his experience. He does not state whether his experience indicates likely possession of a particular kind or kinds of guns or of a wide variety of guns. There was no evidence with respect to the frequency of drug dealers in the gun possessing population as compared to the frequency of drug dealers in the non-gun possessing populace. Nor was there evidence of the frequency of drug dealers with guns compared to those without fire arms. Nor was there any testimony as to the means by which he organized, compiled and selected the data used to reach his conclusion.

have guns; numerous police officers have guns; numerous people interested in guns have guns; numerous heroin dealers have guns; numerous thieves have guns; numerous people in illegal activities have guns; the defendant has a gun. In light of the multiplicity of reasons for which guns are possessed, evidence that the defendant has a gun and that numerous heroin dealers have guns does not give rise to any inferences as to the defendant's hobby, occupation or use of or delivery of heroin. The majority must therefore be relying on the other facts to make McKale's testimony relevant.

The issue on which the case is decided and to which I now turn is whether McKale's testimony about guns is relevant in connection with the chain of facts.

Evidence of the defendant's possession of a coffee grinder, razor blades, film negatives and scales—paraphernalia which were present in defendant's apartment and three of which had traces of heroin residue—and McKale's testimony explaining how these paraphernalia are used by heroin dealers, not users, tend to prove that defendant is involved in the sale, rather than the use, of heroin. We all know that many homes have coffee grinders, razor blades, scales and film negatives. But in homes where people are not involved with heroin, traces of heroin residue are not found on these items, and these items are not generally assembled or grouped in one place as they were in the defendant's apartment. The defendant's razor blades, scale and film negatives were together on the dining room table. The coffee grinder was on a kitchen shelf and had heroin residue on it. These items are used directly in the sale of heroin.

These drug paraphernalia in and of themselves were not sufficient to establish defendant's guilt beyond a reasonable doubt. McKale's testimony as to the guns was, as the state argued, required to show that the defendant fit the pattern of or conduct followed by heroin dealers

so that the trier of fact could conclude that the defendant was a heroin dealer.[5]

McKale's testimony as to the use of guns by drug dealers does not perform the same evidentiary function as does his testimony as to the paraphernalia which, like guns, are found in homes of innocent citizens—as well as criminals. The residue on the paraphernalia directly showed possession of heroin. The paraphernalia and McKale's testimony explaining the use of these items by heroin dealers are circumstantial evidence of intent to

---

[5] In this case the state was attempting to draw a picture of the typical heroin dealer in order to enable the trier of fact to fit the defendant into that picture. This case is not like the profile cases concerned with whether the profile evidence provides probable cause to search or a reasonable suspicion to detain briefly. *See United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed.2d 497 (1980); *Reid v. Georgia,* 448 U.S. 438, 65 L. Ed.2d 890 (1980); *United States v. Cortez,* —— U.S. ——, 101 S. Ct. 690 (1981); *United States v. Lopez,* 328 F. Supp. 1077 (S.D.N.Y. 1971); *United States v. McCaleb,* 552 F.2d 717 (6th Cir. 1977); Ninth Circuit Survey, *"Profile" Stops and the Fourth Amendment Reasonable Suspicion or Inarticulate Hunches?,* 10 Golden Gate U. L. Rev. 112 (1980); Carter, *Fourth Amendment—Airport Searches Seizures: Where Will the Court Land?,* 71 J. Crim. L. and Crim. 499 (1980). *See also* Williams, *Selection Criteria for Career Criminal Programs,* 71 J. Crim. L. and Crim. 89 (1980).

This case does not appear to raise the question of introducing an expert to testify as to statistical inference or the probability theory of the defendant being a dealer if he had the multiple characteristics of a dealer. The application of the law of probability to the courtroom is problematic. *See People v. Riley,* 214 N.Y. 75, 108 N.E. 200 (1915); *People v. Collins,* 66 Cal. Rptr. 497, 438 P.2d 33 (1968); McCormick, *Evidence* sec. 204 (Cleary ed. 1972); Liddle, *Mathematical and Statistical Probability As A Test of Circumstantial Evidence,* 19 Case Wes. Res. L. R. 254 (1968); Stoebuck, *Relevancy and the Theory of Probability,* 51 Iowa L. Rev. 849 (1966); Ball, *The Moment of Truth: Probability Theory and Standards of Proof,* 14 Vand L. Rev. 807 (1961); Kingston, *Probability and Legal Proceedings,* 57 J. Crim. L. and Crim. 93 (1966); Comment, *Probability Theory and Constructive Possession of Narcotics: On Finding That Winning Combination,* 17 Houston L. Rev. 541 (1980); Comment, *Evidence—Rules of Admissibility and the Law of Probability,* 8 Land and Water L. Rev. 285 (1973).

deliver heroin, that is, evidence from which a jury could infer defendant's intent to sell, because the paraphernalia are typically utilized by sellers of heroin not users of heroin. In contrast, McKale's testimony about dealers' use of guns does not tie guns particularly to dealers rather than to users or the defendant's guns directly or indirectly to heroin sale per se even when viewed in connection with the chain of facts.

In order for McKale's testimony as to the guns to have a tendency to alter the probability that the defendant intended to deliver heroin, the majority must be making the following inferences from McKale's statement: Numerous heroin dealers possess guns, because they need guns to protect their person and property. The heroin dealer's need for protection comes from his being engaged in an illegal activity. He must protect himself from the police, which is why McKale experienced gunfire in executing search warrants. He must protect himself from drug addicts and thieves, because he cannot rely on police protection. He fears addicts and thieves because as a dealer he has valuable property on his premises—heroin, which is costly, and the cash which he receives on the heroin sale. The majority must then infer that a heroin possessor is also engaged in illegal activity and will want to protect himself from the police, but that a possessor, having less heroin and less cash on his premises, is not as fearful of addicts and thieves as is the dealer. The majority must then further infer—all from McKale's one sentence—that the heroin possessor is therefore less likely to have guns than is a heroin dealer. Because the defendant is involved in heroin activity and has a gun, the majority must then infer that the defendant has a gun because he anticipates having to protect himself from police, addicts and thieves, because he anticipates having large amounts of heroin and cash, because he knows he is a dealer.

McKale did not state that heroin dealers are more apt to have guns than are heroin users. McKale did not testify that the guns in defendant's possession were of a type generally used by heroin dealers as distinguished from those used by heroin users or by other criminals or that the guns were used or possessed by this defendant for self-help or in any other manner related to the sale of heroin.[6] Without such testimony, the majority cannot infer from its experiences that heroin dealers are more apt to have guns than are heroin users. The majority knows from its experience that numerous drug users steal cash and valuables in order to get money to buy drugs and that such thieves use weapons, including guns. Consequently, from experience and the record, the majority can infer only that numerous heroin users, as well as numerous heroin dealers, have guns. Because the majority cannot infer that heroin users are less likely to have guns than heroin dealers, McKale's testimony, without further foundation or explanation, does not make the existence of the defendant's intent to deliver heroin more probable than it would be without McKale's testimony. Consequently I conclude that the officer's testimony as to drug dealers and guns is no more relevant to intent to deliver heroin with the "chain of facts" than without the chain of facts.

In order to infer defendant's intent to deliver heroin from McKale's testimony as to his encounters with numerous dealers, one must construct many links in a chain of inferences. A great number of the links are weak and rest on speculation and reaction, not on assumptions and inferences logically drawn on the basis of probabilities resting in human experiences, science or reason.

---

[6] Were McKale to have offered this testimony a question would remain whether this evidence would be relevant absent other evidence tending to show that the guns, like the paraphernalia here, were actually used in the manner sought to be inferred. No such evidence was offered.

McKale's testimony is an invitation to the trier of fact to speculate as to the association between the witness's statement and the innocence or guilt of the defendant. Admitting testimony on this basis invites prejudice by presenting assertions to the jurors which are received as evidence yet which bear not so much on the issues in the case but upon the reactions of the jury.

I therefore conclude that the evidence should have been excluded on grounds of relevancy. If I viewed this evidence as marginally relevant, I would conclude that McKale's testimony, which raises the spectre of the police doing their job while being met by gunfire, should have been excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Sec. 904.03, Stats. 1979–80.

Although it is a close question, I conclude the error was prejudicial. I therefore dissent.