MORALES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 6.  Argued September 5, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 684.)

100

For the plaintiff in error there was a brief and oral argument by *Paul C. Konnor* of Milwaukee.

For the defendant in error the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HANLEY, J. We have presented the following issues:

(1) Does the record contain sufficient evidence to support the finding of probable cause for the issuance of the search warrant;

(2) Was the warrant executed properly;

(3) Was the seizure of "mere evidence" pursuant to the issuance of a search warrant properly admitted into evidence; and

(4) Was it proper to introduce the defendant's statement into evidence?

### Probable Cause.

It is the contention of the defendant that there was insufficient evidence to substantiate the magistrate's finding of probable cause and that the search warrant should not have been issued. In reference to a finding of probable cause this court has stated that:

". . . Like any other judicial finding, this finding of probable cause must stand, unless the proof is clearly insufficient to excite an honest belief in a reasonable

mind." *Glodowski v. State* (1928), 196 Wis. 265, 271, 220 N. W. 227.

The burden is thus upon the defendant to establish that such evidence was clearly insufficient. In attempting to meet this burden he raises several arguments.

His first argument centers around the credibility of Carlos Alvarez, upon whose testimony the search warrant was initially issued. It is claimed that Alvarez was not "credible" and that the magistrate should have inquired into his credibility.

In attacking Alvarez's credibility, defendant points to several factors which were not considered by the magistrate when the warrant was issued. The first of these is the testimony of Mrs. Sandra Morales, wife of the defendant, that prior to her marriage she had dated Carlos Alvarez, until discovering that he was already married. Defendant also indicates that Alvarez ultimately testified he had never been to the Morales apartment prior to the time he purchased the heroin and he therefore could not reasonably have testified that the premises were rented by him.

Although such factors might cast doubt upon Alvarez's credibility, they are irrelevant in that this court has stated:

". . . One can challenge the legality of the search only upon the record established before the magistrate when he authorized issuance." *State v. Mier* (1948), 254 Wis. 180, 185, 35 N. W. 2d 196.

Although the brief of the defendant fails to indicate where in the record this testimony is located, it clearly was not heard by the magistrate prior to his issuance of the warrant. This testimony occurred during the trial.

As to the magistrate's failure to inquire into the credibility of Alvarez, it is sufficient to state that no such duty exists. As indicated by the state's brief, ". . . These questions are relevant *only* where the application

for the warrant is based on hearsay information supplied by an unnamed informant." *See Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723; *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637; and *State v. Beal* (1968), 40 Wis. 2d 607, 162 N. W. 2d 640. Alvarez testified as to facts of which he was personally aware; and the magistrate, having heard such testimony, was justified in accepting it as trustworthy.

Error is also assigned to the warrant's issuance on the ground that too great a length of time elapsed between events described by both Alvarez and Detective Sandoval and the issuance of the warrant. He claims their testimony was "stale" and therefore insufficient to support the finding of probable cause.

As pointed out by the state's brief, an annotation located at Annot. (1965), 100 A. L. R. 2d 525 contains numerous cases dealing with the permissible time lapse between the occurrence of the facts relied upon and the making of the affidavit or issuance of the warrant. An examination of these cases indicates that, as stated in footnote 12, page 534 of the annotation, ". . . an interval of less than 4 days has never been held so unreasonable as to vitiate a search warrant, while, on the other hand, an interval of more than 49 days has always been held an unreasonably long delay."

The testimony by Alvarez concerned activities occurring four days prior to the issuance of the warrant, while Detective Sandoval's testimony concerned observances occurring two days prior to issuance. Such brief periods should not render the evidence "stale" and thereby vitiate the magistrate's finding of probable cause.

In attacking the magistrate's finding, the defendant also urges a somewhat unique argument upon this court. The essence of this argument is that the court's issuance of the second warrant is in itself sufficient proof that Alvarez's testimony was neither credible nor sufficient

to establish probable cause. He then speculates that the initial warrant was executed, and since illegal at its inception, it could not be legalized by Detective Sandoval's subsequent testimony.

The state correctly states that this is sheer speculation and argues that it should not be punished for taking added precautions to insure a proper basis for the issuance of search warrants. It is agreed that a proper basis must be shown for the issuance of warrants. However, the procedure followed by the district attorney's office does raise suspicion as to whether a search was in fact made pursuant to the original warrant which was subsequently feared invalid. In cases such as this where the defendant is in custody when both warrants are issued it is impossible to substantiate a claim of improper execution. In order to insure public confidence in the integrity of the police such procedure should be avoided.

We think Detective Sandoval's testimony was superfluous since the testimony of Alvarez was sufficient to support a finding of probable cause. Thus there has been no miscarriage of justice.

The defendant's final contention as to the warrant's invalidity is that it failed to adequately describe the property to be searched. In *Chruscicki v. Hinrichs* (1928), 197 Wis. 78, 80, 81, 82, 221 N. W. 394, this court stated:

" 'The prevailing rule is that the place to be searched is sufficiently described if the officer to whom the warrant is directed is enabled to locate it with certainty.' . . . 'This does not necessarily require the exact legal description to be given, such as ordinarily appears in deeds of record in the county recorder's office. . . .'

" . . .

"The purpose of requiring the warrant to particularly describe the property to be searched is to direct the officer to the exact place to be searched and to guard against the abuses that prevailed under the old writs

of assistance which left the place to be searched to the discretion of the officer. Any description which identifies the property to be searched 'with reasonable certainty . . . satisfies the calls of both constitutional and statutory provisions.' "

" '. . . Nice or technical descriptions are not required . . . .' " *Anderson v. State* (1927), 192 Wis. 352, 357, 212 N. W. 628.

In neither *Chruscicki* nor *Anderson* was a multi-unit building involved. As indicated by the annotation located at Annot. (1967), 11 A. L. R. 3d 1330, 1332, other courts are generally ". . . agreed that a warrant is invalid if it contains no description of the subunit to be searched but refers merely to the larger multiple-occupancy structure. . . ."

Although the warrant issued in the instant case allowed the search of property described as "the upper premises known as 1660 N. Arlington Place, in the City and County of Milwaukee. The entire second floor of said premises," there was subsequent testimony to the effect that the dwelling contained four families, two of which resided upstairs. It is upon this fact that the defendant challenges the description.

Although Wisconsin has not directly passed upon such a challenge, we think it can be disposed of under one of the exceptions to the rule requiring identification of the subunit. One such exception exists ". . . where the warrant, although deficient as to the physical description of the subunit, adequately identifies it by naming the occupant thereof. . . ." Annot. (1967), 11 A. L. R. 3d 1332. Although the warrant under consideration did not name Morales, his picture was attached thereto, and the executing officer was familiar with the subunit to be searched. As stated on page 1333 of the annotation,

". . . [This] exception[s] . . . [is] consonant with the rule that the description in a warrant need not be as specific as that in a deed to property, but need only be

sufficiently specific to designate the premises definitely and with certainty. . . ."

*Execution of the Warrant.*

The defendant also questions the force which was employed by the officer in breaking down the door to his apartment. He correctly maintains that a police officer must identify himself and his purpose and, except under special circumstances, allow time for the door to be opened. However, he erroneously asserts that there must be additional testimony to substantiate that of the executing officer who testified as follows:

"*A.* Upon arrival, I knocked at the door, which is the upstairs premises. After not receiving an answer, I stated, 'I am a police officer, and I have a search warrant. Open the door.' At that time there was still no answer. I could hear what I believed was a radio playing inside. After having been refused answer, I forced the door open and entered.

"*Q.* You went into the premises then? *A.* Yes.
"*Q.* And what if anything did you do after entering the premises at 1660 North Arlington Place? *A.* I conducted a search of the entire apartment."

The testimony of the officer is uncontroverted, and the trier of fact was justified in accepting it as a verity. Under the circumstances confronting the officer, his conduct was justified.

*Seizure and Admission of "Mere Evidence."*

The defendant contends that the seizure and admission into evidence of telephone bills and other documents connecting him with 1660 North Arlington Place were improper because they were not described in the warrant and only evidentiary in value. Since use in state trial of unconstitutionally-seized evidence violates the due process

of law (fourteenth amendment of the United States Constitution) and vitiates a conviction in such trial, it is necessary to determine whether this evidence was legally seized. *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081.

In *Gouled v. United States* (1921), 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, the United States Supreme Court invalidated the seizure of items having purely evidentiary value. Only items constituting fruits, instrumentalities, weapons of escape or contraband could be validly seized.

Later, however, in *Warden v. Hayden* (1967), 387 U. S. 294, 300, 301, 87 Sup. Ct. 1642, 18 L. Ed. 2d 782, the court rejected the "mere evidence rule" and stated:

". . . The distinction made by some of our cases between seizure of items of evidential value only and seizure of instrumentalities, fruits, or contraband has been criticized by courts and commentators. The Court of Appeals, however, felt 'obligated to adhere to it.' 363 F. 2d, at 655. We today reject the distinction as based on premises no longer accepted as rules governing the application of the Fourth Amendment."

The rule in *Gouled, supra,* was thus rejected as being "wholly irrational."

Unlike the situation existing in *Warden* where the search was incident to arrest, the instant case involves a search pursuant to a warrant. The state contends that in light of *Warden* the "mere evidence rule" should be discarded no matter how such evidence was discovered and seized. This court is thus urged to disregard *Marron v. United States* (1927), 275 U. S. 192, 48 Sup. Ct. 74, 72 L. Ed. 231, as has been done by many other state and federal courts.

*Marron* held the seizure of books and records (mere evidence) not described in the warrant was not justified. It stated:

"The requirement that warrants shall particularly describe the things to be seized makes general searches

under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States, supra,* at page 196.

We think *Marron* is impliedly overruled by *Warden.* We see no logical basis for a distinction between seizure of items not named in the warrant, but discovered in the course of the search, and items which are seized in a search incident to an arrest. *Warden* specifically rejects the distinction in a search incident to arrest.

### *Admission of Defendant's Statement Into Evidence.*

On the day he was arrested the defendant admitted he was addicted to heroin and had a $70–$100 a day habit. He now claims his statement was irrelevant and immaterial to the possession of narcotics for which he was convicted.

In *Whitty v. State* (1967), 34 Wis. 2d 278, 292, 293, 149 N. W. 2d 557, this court recognized that:

". . . evidence of prior crimes is admissible when such evidence is particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant. The admission of evidence of prior crimes for such purposes is not forbidden because such evidence would not be admissible under the general character rule.

". . .

"It is not necessary that prior-crime evidence be in the form of a conviction; evidence of the incident, crime or occurrence is sufficient. . . ."

The major element of the crime for which the defendant was convicted is possession. In order to establish this element it was necessary to connect him with the apartment in which the narcotics were found. Since the defendant attempted to establish that he was not in pos-

session, occupancy or control of the apartment, his statement was introduced to establish his association with the drugs found therein. The test adopted in *Whitty* requires the trial judge to balance the relevancy of the evidence with the prejudice it will incite. In the instant case we think the relevancy outweighed any resulting prejudice to the accused.

*By the Court.*—Judgment affirmed.