STATE of Wisconsin, Plaintiff-Respondent,

v.

Adrian J. JACKSON, Defendant-Appellant.

Court of Appeals

*No. 2007AP1362–CR. Oral argument April 1, 2008. —Decided June 10, 2008.*

2008 WI App 109

(Also reported in 756 N.W.2d 623.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Martin E. Kohler* and *Craig S. Powell* of *Kohler & Hart LLP*, of Milwaukee. There was oral argument by *Brian Kinstler*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Juan B. Colas*, assistant attorney general. There was oral argument by *Sally L. Wellman*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Adrian J. Jackson appeals from a judgment of conviction and sentence which followed his guilty plea after the trial court denied his motion to suppress certain evidence obtained pursuant to a search warrant. Jackson asserts the warrant was in-

valid. We conclude that the warrant failed to establish the particularity required for the search of one unit in a multifamily residence, and failed to establish probable cause for the search of the building as a whole or either unit therein. Consequently, we reverse.

## Background

¶ 2. A judicial court commissioner issued a warrant for "certain premises . . . occupied by . . . Adrian Jermaine Jackson" described as: "Address of 4124 N. 21st Street is a two-story duplex residence" with the physical description of the exterior of the building repeated verbatim from the affidavit presented in support of the warrant. There is no description of any portion of the interior of the residence. The warrant identifies the crime for which evidence is sought as "[p]ossession of a [f]irearm by convicted felon" in violation of WIS. STAT. § 941.29 (2005–06).[1]

¶ 3. The affidavit[2] (Affidavit) of Milwaukee County Sheriff's Detective Keith P. Thrower in support of the warrant issued November 1, 2004, is relied upon as establishing probable cause to believe that Jackson committed the crime of possession of a firearm by a felon, and that evidence of that crime would be in the building for which the warrant was issued. The Affidavit is composed of eleven paragraphs. The connection between Jackson, the residence, and Jackson's possession of any firearms is mentioned only in parts of two paragraphs in the Affidavit:

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] The copy of the Affidavit in the record before us is unsigned and undated. However, there is no dispute that the original was signed and there is no dispute that the copy before us accurately reflects the original affidavit.

[A] reliable confidential informant . . . within the past eight days, went to 4124 N. 21st Street and observed Adrian Jackson in possession of two-semi [sic] automatic pistols at the residence of 4124 N. 21st Street in the City and County of Milwaukee.

A check of records also showed that Adrian J. Jackson listed the same address (4124 N. 21st Street) under County Jail Booking Records as of 02/13/04.

¶ 4. The Affidavit describes Thrower's experience in investigating firearm offenses and other offenses, his work with a specific confidential informant, including why Thrower believes the informant is reliable, and a physical description of the exterior of the building that Thrower wishes to search. Thrower identifies Jackson's prior felony conviction for endangering safety by use of a dangerous weapon, and discloses that a county jail booking record from February 13, 2004, lists Jackson's address as 4124 North 21st Street. Curiously, Thrower asks to search the building for evidence of who controls the duplex, but the Affidavit provides the issuing magistrate with no factual information (e.g. utility billing, property tax records, driver's license, vehicle registration at the address, or reports from neighbors or police surveillance) which tends to indicate what, if any, portion of the duplex Jackson lives in or controls.

## Standard of Review

¶ 5. In *State v. Stank*, 2005 WI App 236, ¶ 30, 288 Wis. 2d 414, 708 N.W.2d 43, where we refused to allow an after-the-warrant attempt to challenge the credibility of a witness who testified before the warrant-issuing court, we noted that any challenge to the warrant-issuing court's finding is "limited to the record estab-

lished before the court at the time it issued the warrant." *Id.,* 288 Wis. 2d 414, ¶ 30; *see also State v. Lindgren,* 2004 WI App 159, ¶ 16, 275 Wis. 2d 851, 687 N.W.2d 60; *United States v. Hinton,* 219 F.2d 324, 326 (7th Cir. 1955) ("The validity of the warrant is dependent on the facts shown in the affidavit before the issuing authority.").

> Whether there is probable cause to believe that evidence is located in a particular place is determined by examining the "totality of the circumstances." . . . [A] probable cause determination must be based upon what a reasonable magistrate can infer from the information presented by the police . . . . We therefore consider only the facts presented to the magistrate.

*State v. Ward,* 2000 WI 3, ¶ 26, 231 Wis. 2d 723, 604 N.W.2d 517 (internal citations omitted). "It is the duty of the reviewing court to ensure that the magistrate had a substantial basis to conclude that the probable cause existed." *Id.,* ¶ 21 (internal citations omitted); *see also Stank,* 288 Wis. 2d 414, ¶ 30.

¶ 6. The trial court held a hearing on Jackson's motion challenging the validity of the warrant. The State requested permission, and was allowed, to present extraneous evidence well beyond that which had been before the issuing magistrate. Because, as we have seen, the validity of the warrant cannot be established by material not before the magistrate, *see Lindgren,* 275 Wis. 2d 851, ¶ 16; *Ward,* 231 Wis. 2d 723, ¶ 26, and because the State agreed at oral argument before this court that the only proper measure of the validity of the warrant is the information that was presented to the issuing magistrate, we do not consider

the testimony from the suppression hearing nor do we defer to the trial court's factual findings based on that evidence.

## Discussion

¶ 7. The validity of a search warrant is measured against the requirements of the Fourth Amendment of the United States Constitution,[3] and Article I, Section 11 of the Wisconsin Constitution.[4] The parties here make no argument that the Wisconsin Constitution provides broader protections than those found in the Fourth Amendment; hence, we assume for purposes of this decision that the two provisions provide coterminous protection.

### I. Particular description of place to be searched

¶ 8. In *State v. Schaefer*, 2003 WI App 164, 266 Wis. 2d 719, 668 N.W.2d 760, we noted that: "The particularity requirement serves three purposes by preventing general searches, the issuance of warrants

---

[3] The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[4] Article I, Section 11 of the Wisconsin Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

170

on less than probable cause, and the seizure of items different from those described in the warrant." *Id.,* ¶ 23. A warrant must sufficiently describe the place to be searched so that the officer "can with reasonable effort ascertain and identify the place intended." *Maryland v. Garrison,* 480 U.S. 79, 91 (1987) (quoting *Steele v. United States,* 267 U.S. 498, 503 (1925)).

¶ 9. If the location to be searched is not described with sufficient particularity to inform officers which unit in a multi-unit building they are to search, the particularity required by the Fourth Amendment has not been satisfied. *Hinton,* 219 F.2d at 325–26. "[A] warrant which describes an entire building when cause is shown for searching only one apartment is void." *Id.* at 326 (citations omitted); *see also United States v. Votteller,* 544 F.2d 1355, 1363 (6th Cir. 1976). "For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house or, in this case, each apartment." *Hinton,* 219 F.2d at 325–26.

> [I]f the officers had known, or . . . should have known, that there were two separate dwelling units on the third floor . . . they would have been obligated to exclude respondent's apartment from the scope of the requested warrant . . . . The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.

*Garrison,* 480 U.S. at 85. Where the officer concluded, after making a reasonable investigation (including verifying information from a confidential informant, inquiring from the utility company about billing records,

171

and exterior examination of a three-story building), that there was only one third floor apartment at the specified address and that it was inhabited by McWebb, a warrant to search "the third floor apartment" and "the person of McWebb" was a valid warrant. *Id.* at 81–82.

¶ 10. Where probable cause is provided for a search of a location, and the description of the location specifically identifies it as part of an obviously multi-unit building, a search conducted within the premises included within the description set forth in the warrant, but in a place that was unknown to the officers at the time the warrant was issued, is permitted. *Rainey v. State*, 74 Wis. 2d 189, 205, 246 N.W.2d 529 (1976). In *Rainey*, the warrant authorized search of the "[e]ntire first floor premises" of a building which contained a business. *Id.* at 201. The officers discovered a balcony area raised up from the first floor, but which did not reach the second floor and which was accessible only from the first floor. *Id.* at 204. Noting the significant detailed description of the interior of the premises, and the detailed description of personally observed drug transactions in the building which was provided by the informant in support of the warrant,[5] our supreme

---

[5] This warrant was based on sworn testimony before the magistrate rather than an affidavit. *Rainey v. State*, 74 Wis. 2d 189, 195, 246 N.W.2d 529 (1976). The witness, who was not identified on the record, described the business as including a shoeshine parlor with pool tables and a juke box, all on the first floor. *Id.* The witness testified that he had been at the premises about a dozen times in the past year, had been inside within the last forty-eight hours, and that he had witnessed the person who ran the business (Wendall) sell heroin. *Id.* The witness described seeing a customer give Wendall cash, and then the witness, the customer and Wendall went to "a small room in the

court approved the search of a balcony area as included within "the entire first floor" authorized by the warrant. *See id.* at 205 ("The obvious purpose of designating the entire first floor premises in the warrant was not to limit the search literally to the first floor, but to identify the area to be searched and to distinguish it from the separate second-story dwelling." (italics omitted)).

¶ 11. In a case dating from the Prohibition Era, the description of the place to be searched for "intoxicating liquors" was sufficiently particular when, although two addresses applied to the building, the search was requested of "the garage located in the building at 611 West Forty-Sixth street," together with "any building or *rooms connected* or used in connection *with said garage,* the basement or subcellar beneath the same." *Steele,* 267 U.S. at 500 (italics supplied). Evidence seized from rooms on each floor of the building that were connected to the garage by an elevator was properly obtained because, the supreme court explained, the place to be searched had been particularly described. *Id.* at 503.

¶ 12. In *Morales v. State,* 44 Wis. 2d 96, 170 N.W.2d 684 (1969), a warrant was issued for the upstairs portion of a two-family dwelling. *Id.* at 99. Probable cause for issuing the warrant was challenged for a variety of reasons, of relevance here is the claim that the property to be searched was inadequately described. *Id.* at 104. As the court explained, "[t]he prevailing rule is that the place to be searched is sufficiently described if the officer to whom the warrant is directed is enabled to locate it with certainty" but that an exact legal description is not required. *Id.* at 104 (quoting *Chruscicki v. Hinrichs,* 197

---

rear of the establishment" where the witness saw Wendall retrieve three "dime bags" of heroin from behind a board in the back room. *Id.* at 196. The police officer verified the address and testified about the physical layout of the building. *Id.*

Wis. 78, 80–81, 221 N.W. 394 (1928) (two sets of quotation marks omitted)). The court further explained that "[t]he purpose of requiring the warrant to particularly describe the property to be searched is to direct the officer to the exact place to be searched and to guard against the abuses that prevailed under the old writs of assistance which left the place to be searched to the discretion of the officer." *Id.* at 104–05 (quoting *Chruscicki*, 197 Wis. at 82). In *Morales*, the search warrant was issued for "the entire second floor" but it turned out that, unbeknownst to the officers, there were two families living on the second floor. *Id.* at 105. The court noted that Wisconsin had not decided whether a description of a multi-unit building was adequate when the unit was described by naming the occupant. *Id.* Although the warrant did not name Morales, the court concluded that because Morales's picture was physically attached to the warrant and because the officer "was familiar with the subunit to be searched," the property to be searched was designated with sufficient certainty. *Id.* at 105–06. Nothing in the record here suggests that Jackson's picture was attached to the warrant, nor is there anything in the record to suggest that the officer was personally familiar with the duplex units.

¶ 13. Both the Affidavit and the warrant in this case identify the place to be searched as 4124 North 21st Street, "a two-story duplex residence." A "duplex" is defined as "having two parts or elements" and as "a two-family house."[6] Webster's Third New Internat'l Dictionary, unabridged, 702 (Merriam Webster, Inc. 1993).[7]

_____

[6] Additionally, a "duplex house" is defined as a "two family house." Webster's Third New Internat'l Dictionary, unabridged, 702 (Merriam Webster, Inc. 1993).

[7] The Dissent, ¶¶ 30–31, seems to suggest that unless the affidavit establishes that a "two-story duplex residence" is

To argue without any supporting evidence that a "two-story duplex residence" is a single family home is like arguing that a silo is a water storage tank.

¶ 14. The Affidavit does say that Jackson was seen with guns *at* the common address of the duplex units, but it does not say Jackson was seen *in* the duplex or any specific part thereof. Contrary to the inference of the dissent, that the informant reported that he or she saw Jackson *in* the duplex, Dissent ¶ 30, the Affidavit reports only that the informant "observed Adrian Jackson in possession of two-semi [sic] automatic pistols *at* the residence." *See* ¶ 3, *supra*. The Affidavit does not report that anyone—informant, officer, or neighbor—has ever seen guns *in* any particular part of the building. The Affidavit does not report anyone saying they have seen Jackson (with or without guns) *in* any particular unit of the building.

actually what it is commonly understood to be, namely a two-family home, then we should ignore the commonly understood dictionary meaning of the term and consider it to be a single family home. We decline the invitation to ignore the plain meaning of the words used. Further, the Dissent's assertion that Jackson's mother lived in the lower unit does not change the outcome of the analysis. First, this is a fact not disclosed to the magistrate in the affidavit and apparently not known by the officer at the time of application for the warrant; we may not consider facts not disclosed at the time the warrant was obtained in determining the sufficiency of the warrant on its face. Second, because this record does not indicate that law enforcement knew at the time of application for the warrant that Jackson's mother lived in the lower unit or whether she allowed Jackson access to her unit, the Fourth Amendment prohibition against a general warrant hardly condones visiting on the mother who lives in one unit the search warrant consequences of possible crime by the son who lives in the other unit of a "two-story duplex residence."

175

¶ 15. Neither the Affidavit nor the warrant identify which portion of the two-family residence is to be searched. The unit of the duplex "occupied by . . . Adrian Jermaine Jackson" is not, in any way, otherwise identified. The record does not indicate that Jackson's picture was attached to the warrant, as occurred with the search warrant in *Morales. See id.*, 44 Wis. 2d at 105–06. The Affidavit reports no investigation by law enforcement beyond looking at a booking record for Jackson from eight months earlier that identifies as his residence the address common to the whole duplex. Not a shred of evidence presented to the magistrate hints at which unit Jackson occupied.[8] Indeed, the paucity of information about who resides in, or otherwise controls, either unit of the duplex is brought into sharp focus by the officer's request at paragraph seven of his affidavit to search for "documents which establish the identit*ies* of person*s* in control of the premises." (Emphasis added.) The officer's use of the plural indicates the officer either knew or believed that more than one person inhabited, or had control of, the "two-story

---

[8] The Dissent ¶ 31, argues that Jackson's mother lived in the lower unit, therefore the officer properly concluded that Jackson had access to both dwelling units. The Dissent ignores the fact that this was unknown to the magistrate when he issued the warrant, and that there is no evidence in the record that the officer was aware of which unit either Jackson or his mother lived in when he applied for the warrant. As we have seen, when determining the sufficiency of the warrant, we may consider only the facts known to the magistrate when he issued the warrant. *See State v. Stank*, 2005 WI App 236, ¶ 30, 288 Wis. 2d 414, 708 N.W.2d 43 (any challenge to the warrant-issuing court's finding is "limited to the record established before the court at the time it issued the warrant.") *State v. Lindgren*, 2004 WI App 159, ¶ 16, 275 Wis. 2d 851, 687 N.W.2d 60, *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955).

duplex residence," but that he did not know who inhabited or controlled either unit, much less the entire building.

¶ 16. More is needed than was presented here to move from a general warrant for a multi-unit building to a warrant that describes with particularity the unit in a multi-unit building which is to be searched. *See Garrison*, 480 U.S. at 91; *Morales*, 44 Wis. 2d at 105; *Hinton*, 219 F.2d at 325–26.

*II. Probable cause to search the entire building*

¶ 17. The warrant describes the place to be searched as "certain premises . . . occupied by . . . Adrian Jermaine Jackson (M/B 09/21/76)" followed by:

> 1. DESCRIBE PREMISES: Address of 4124 N. 21st Street is a two-story duplex residence. The residence has a reddish brown colored roof, tan siding, and dark brown trim and a green upper dormer. The residence has silver in color aluminum storm windows[.] The front door faces south towards W. Atkinson Ave. The front door has a black-gated storm door and a brown inner door. The numbers "4124" are black in color over a white background and is [sic] located on the south corner of the house. There is an upper porch on the front of the residence with a black railing and a door leading to it. The residence is on the east side of the street (N. 21st) in the City and County of Milwaukee.

¶ 18. The State argues that the Affidavit establishes probable cause to search the *entire* building. To prevail on the State's "whole building" theory of the search warrant, there must be probable cause in the Affidavit to search each unit in the building, or there must be probable cause to search the entire building. We consider each alternative.

177

¶ 19. The magistrate was told only that the informant saw Jackson with two guns "at the residence of 4124 N. 21st Street" and that a booking record shows Jackson used that address eight months earlier. Nothing in the Affidavit states that Jackson had been observed using both of the two-story duplex units, or that the two-story duplex is actually a single family residence. Inferring from the limited information provided in the Affidavit that a two-story duplex was actually a single family residence, or that Jackson actually lived in both units, would be only speculation. While a magistrate is permitted reasonable inferences from the information presented, " 'the finding cannot be based on the affiant's suspicions and conclusions, the magistrate may make the usual inferences reasonable persons would draw from the facts presented.' " *Ward*, 231 Wis. 2d 723, ¶ 27 (quoting *Bast v. State*, 87 Wis. 2d 689, 693, 275 N.W.2d 682 (1979)).

¶ 20. It is also long established that the location of the object of the search (here primarily the semi-automatic guns) must be described with sufficient specificity to establish probable cause to believe the things sought will be found in the location described. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 238 (1983) (For probable cause to exist, police affidavits must contain sufficient evidence to show that a "fair probability [exists] that contraband or evidence of a crime" will be found at the location specified in the search warrant.); *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995) ("In practice, courts have therefore demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit." (citation omitted)).

¶ 21. Unfortunately, the Affidavit also tells the magistrate nothing about the interior of the two-story duplex residence, or where in, or on, the 4124 North 21st Street two-story duplex Jackson was seen in possession of guns, or where in, or on, the property anyone saw any guns. The Affidavit lacks any particularized information in which the crime of possessing a firearm was actually observed or identifying the unit in which Jackson actually resided. As we have seen, "[a] warrant describing an entire building when cause is shown for searching only one apartment is void." *Votteller,* 544 F.2d at 1363. Further, as we discussed, *see* ¶ 15 *supra,* the scope of the officer's request to search for documents "which establish the identities of persons in control of the premises," is an admission that the officer simply did not know who lived in, used or controlled either of the two-story duplex units at the time the warrant was obtained.

¶ 22. The Affidavit contained nothing suggesting the duplex was anything other than a two-family residential building. That Jackson may have used an address common to both units of the duplex in no way particularizes his residence to a specific unit. Nor does use of an address common to more than one unit of a building permit the reasonable inference that the duplex was actually a one-family residence. If one person's use of a common address in a multi-unit building permitted the reasonable inference that this person occupied the entire building, then a search warrant for a person using the address of 633 West Wisconsin Avenue, Milwaukee, Wisconsin, would permit search of all units in that building.[9] The Fourth Amendment does not cast so wide

[9] This is the address of the Court of Appeals, District I, as well as numerous other individuals, businesses and agencies.

a net. *See Hinton*, 219 F.2d at 326 ("Federal courts have consistently held that the Fourth Amendment's requirement that a specific 'place' be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void."); *see also Votteller*, 544 F.2d at 1363. Because of the Fourth Amendment's particularity requirement, " 'a search warrant directed against an apartment house will usually be held invalid if it fails to describe the particular apartment to be searched with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons.' " *Id.* (quoting *United States v. Bedford*, 519 F.2d 650, 654–55 (3d Cir. 1975), *cert. den.* 424 U.S. 917 (1976)).

¶ 23

> "Just as probable cause to believe that a stolen lawn-mower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being trans-ported in a van will not justify a warrantless search of a suitcase."

*Garrison*, 480 U.S. at 85 (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). From the meager informa-tion in the Affidavit here, a magistrate could not reasonably infer that there is probable cause to believe Jackson had control of and/or unrestricted access to both of the two living units in the building searched or that evidence of Jackson's possession of guns was probably going to be found in the upper unit, in the lower unit, in the basement, in the garage, or in the trash can.

¶ 24. While a single warrant may identify different residences within a single building, still probable cause must be shown for searching *each* residence unless the information supporting the warrant provides probable cause to believe that although appearing to be a multi-unit building, the entire building is actually being used as a single unit. *See Hinton*, 219 F.2d at 326.

¶ 25. Where the warrant does not distinguish between units in a multi-unit building, but where the officer testifies to the magistrate that he intends to search the entire building, a subsequent challenge to the warrant based on overbreadth was denied where, at the time the officer applied for the warrant, the officer had additional knowledge which supported probable cause to search the entire building. In *United States v. Johnson*, 26 F.3d 669 (7th Cir. 1994), probable cause for a search warrant for an entire building, a two-story duplex in Milwaukee, was established where the supporting affidavit described, among other things: (1) three controlled buys of cocaine by an informant with the cocaine having been retrieved by the seller in each instance from the building to be searched; (2) the informant had been inside the building and observed cocaine there; (3) the detective described a two-year investigation which included police surveillance; and (4) the detective testified before the magistrate that the house was a duplex and that he wanted the warrant to cover the entire building. *Id.* at 695. At the hearing challenging the overbreadth of the warrant and testing the reasonableness of the officer's belief, as part of a large investigation of conspiracy to distribute cocaine, that he had probable cause to search the entire building, *id.* at 688 n.14, the officer established that the confidential informant accompanied the primary target to this duplex on three occasions to

181

complete a controlled buy of cocaine, *id.* at 687. In one instance, she saw the primary target go in the side door and when he returned with the cocaine he told her that the entire upstairs smelled like cocaine. *Id.* In the second instance, the informant went upstairs with the primary target who retrieved cocaine and sold it to her. *Id.* In the third instance, the informant was accompanied by an undercover female officer. *Id.* The informant, leaving the undercover officer outside the building, went inside and upstairs where she saw a kilo of cocaine. *Id.* In that instance, she purchased six ounces of cocaine from the primary target and returned to the undercover officer who was waiting outside. *Id.* The police did a check of utility bills and learned that bills for both units of the building were paid by the primary target. *Id.* They also learned that at one point the utilities were stopped due to non-payment which resulted in a call from another target (identified later as the girlfriend of a secondary target) who complained that the primary target always paid the bills. *Id.* As a result of surveillance, police also learned that a specific red Mustang convertible usually parked in front of the duplex was registered to a secondary target and that because it was usually there very early in the morning, the police concluded that this target probably lived in the duplex with the woman who called the utility company. *Id.* The officer, concluding that these two secondary targets had been allowed by the primary target to live in the downstairs unit while all reports connected cocaine with the upstairs unit, concluded that the primary target used the upstairs unit to process and sell cocaine. *Id.* at 688.

¶ 26. No detailed information of the type provided to the magistrate by affidavit and testimony in *Johnson* was provided here in support of the warrant. In *Johnson*, in addition to the experience of the officer and the address and physical description of the building, the

182

magistrate knew that the information the officer had was obtained in a year-long investigation in cooperation with the federal Drug Enforcement Administration, that there had been three controlled buys in which the cocaine originated from this building, and that the informant had been inside the duplex on a specific date and observed more than one pound of cocaine available for distribution there. *Id.* at 689–90. The record here discloses no observation by the informant of anything *inside* the building, no significant investigation of the alleged crime by the officer, and no evidence that the informant claimed to have seen Jackson possessing guns *inside* the duplex the officer wished to search. As we noted, *supra,* ¶ 14, the Dissent infers that the informant reported seeing Jackson with guns *in* the building while the record discloses only that the informant "observed Adrian Jackson in possession of two-semi [sic] automatic pistols *at* the residence" (emphasis supplied). ¶ 30, *supra.*

¶ 27. Further, in the later challenge to the overbreadth of the warrant, the record here does not establish, as was established in *Johnson,* that there was additional information in the possession of the officer at the time of the warrant application, but not disclosed to the magistrate, from which the officer could reasonably conclude he had probable cause to search the entire building.

¶ 28. For the reasons explained above, we conclude that the warrant did not describe with particularity the unit in a duplex to be searched as required by the Fourth Amendment and did not provide probable cause to issue a warrant to search either the entire building or a specific unit thereof.

*By the Court.*—Judgment reversed.

¶ 29. FINE, J. (*dissenting*). The Majority recognizes that in reviewing whether there is probable cause for the issuance of a search warrant we are " 'limited to the record established before the court at the time it issued the warrant.' " Majority, ¶ 5 (quoted source omitted). Thus, where the issuance is based on an affidavit, our review is limited to the " 'facts shown in the affidavit before the issuing authority.' " *Ibid.* (quoted source omitted). Further, we must consider the "totality of the circumstances" as revealed by the affidavit and the "reasonable inferences" that permit the issuing magistrate "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230–231, 238, 240 (1983). Additionally, "we give great deference to the warrant-issuing magistrate." *State v. Sloan*, 2007 WI App 146, ¶ 8, 303 Wis. 2d 438, 446, 736 N.W.2d 189, 193. With these elemental principles in mind, I turn to the affidavit submitted to the magistrate in support of the search warrant here.

¶ 30. The affidavit said that:

- Adrian J. Jackson was a convicted felon;

- Jackson gave his address when booked at the Milwaukee County Jail as "4124 N. 21st Street";

- "**Address of 4124 N. 21st Street** is a two-story duplex residence"; and

- "[A] reliable confidential informant . . . within the past eight days, went to **4124 N. 21st Street** and observed **Adrian Jackson** in possession of two-semi automatic pistols at the residence of **4124 N. 21st Street** in the City and County of Milwaukee."

(Bolding in original.) Inexplicably, the Majority says in ¶ 26 that the affidavit's averment that the informant

184

saw the defendant "in possession of two-semi automatic pistols *at* the residence" (emphasis added) is not sufficient under *Gates* and its progeny to let the magistrate draw the common-sense inference that the informant saw the defendant and his arsenal *in* the residence. The magistrate was surely able to reasonably infer that "at" in the context of the sentence meant "in." There are, however, additional flaws in the Majority's analysis.

¶ 31. Although the Majority concedes that we may not look outside the affidavit, the Majority does so in holding that the word "duplex" meant that the two-story building at 4124 North 21st Street was a "multifamily residence," and that therefore the affidavit should have specified for which "unit" the search warrant was sought. Majority, ¶ 1. There is *nothing* in the affidavit, however, that says 4124 North 21st Street was a "multifamily residence." The affidavit merely says that it was a "duplex" that had but one address. The Majority, however, interposes a dictionary definition and holds *as a matter of law* that *in every case* a description of a building as a "duplex" invariably means that the building is a two-unit structure where the units are as separate from each other as were the two Berlins before the wall was torn down. But, of course, that is not always the case; indeed, that was not the case here because Jackson shared the "duplex" with his mother. (I mention this not, as the Majority says in footnote 7, to add gloss to the affidavit submitted in support of the search warrant, but to demonstrate that the Majority's iron-clad presumption about the living arrangements in a building that is structurally a duplex is wrong.)

¶ 32. Although the Majority conclusively presumes as a matter of law that persons living in duplexes confine their occupancy to either the top or the bottom

unit (the Berlin-wall analogy referred to in the previous paragraph), *there is nothing in the affidavit that even hints that that was the situation here.* The magistrate was fully justified in concluding that the defendant's killing arsenal was somewhere in the two-story house, which, as we have seen, the affidavit described as a "residence," especially because the affidavit *also* represented that "weapons can be secreted *in any part of a residence.*" (Emphasis added.) *This* is the "probable cause" that the Majority says is missing. Simply put, the affidavit gave the magistrate probable cause to believe that guns would be found in the duplex; that is all that is required. It is *immaterial* "who resides in, or otherwise controls, either unit of the duplex," Majority, ¶ 15, because "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized" *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) (quoted source omitted; brackets by *Zurcher*).

> [T]he [Fourth] Amendment has not been a barrier to warrants to search property on which there is probable cause to believe that fruits, instrumentalities, or evidence of crime is located, whether or not the owner or possessor of the premises to be searched is himself reasonably suspected of complicity in the crime being investigated.

*Id.* at 549–550.

¶ 33. The magistrate was fully justified in issuing the search warrant for the entire two-story building. Accordingly, I would affirm.